**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**JAMES J. ROWE and SHARON H. ROWE,**

*Plaintiffs,*

v.                                                              **Civil Action No. 5:13-cv-21369**

**AURORA COMMERCIAL CORP., f/k/a
AURORA LOAN SERVICES, INC.,
NATIONSTAR MORTGAGE, LLC,**

*Defendants.*

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS**

Defendants Aurora Commercial Corp., f/k/a Aurora Loan Services, Inc. ("Aurora") and

Nationstar Mortgage LLC ("Nationstar"), by counsel, submit the following Memorandum in

Support of their Motion to Dismiss.

## INTRODUCTION

Plaintiffs are highly educated, sophisticated consumers who bought a vacation property in

Hilton Head Island, South Carolina, in August 2005.  To close on the loan and execute the loan

documents, Plaintiffs appointed an attorney in South Carolina to serve as Plaintiffs' attorney-in-

fact.  That attorney signed two versions of a certain Adjustable Rate Promissory Note on behalf

of Plaintiffs.  The "first" Note provided for an interest rate floor of 2.25% while the "second"

Note set the interest rate floor at 6.625%.  Plaintiffs received both Notes in September 2005,

before the first Loan payment was due on October1, 2005.  The Note terms are conspicuously

disclosed on their face, and neither Plaintiffs nor their attorney-in-fact contested the terms of the

executed Notes.  Plaintiffs bring this suit **eight years later** alleging, **for the first time**, that the

terms of the "first" Note are the only governing terms, the "second" Note should be disregarded

and the security interest in the property should be cancelled.

In their lawsuit for breach of contract, Plaintiffs have not named either the lender, who originated the Loan and who was the party to the Notes and the mortgage, or Plaintiffs' attorney-in-fact, who executed and closed the Loan for Plaintiffs.  Neither do Plaintiffs name the current creditor despite their request to extinguish this creditor's security interest in the Property.  The only named defendants are prior servicer Aurora and current servicer Nationstar.  However, neither Aurora nor Nationstar originated or closed the Loan.  Aurora and Nationstar merely serviced the Loan that TM Capital, Inc. originated and Laurich, Deeb & Wiseman, P.A. closed as attorney-in-fact for Plaintiffs.  Therefore, Plaintiffs' Amended Complaint must be dismissed for failure to join indispensible parties.

Plaintiffs fail to state a claim for each of the following independent reasons:  (1) the claims are barred by the applicable statutes of limitation and by the plain and unambiguous terms of the Loan contract signed by Plaintiffs' attorney-in-fact; (2) the Plaintiffs failed to join indispensable parties; and (3) the "local action doctrine" bars Plaintiffs' lawsuit because this Court lacks *in rem* jurisdiction over out-of-state real property.

## FACTUAL ALLEGATIONS

1.     On or about August 12, 2005, Plaintiffs purchased a vacation home in Hilton Head Island, South Carolina (the "Property").  (Am. Compl. ¶ 7).[1]  The Property was purchased for $835,000 and is located in the near the beach and the Sea Pines Country Club.  To help finance the purchase, Plaintiffs obtained a loan from TM Capital, Inc. ("TM Capital") for $626,250.000 with an adjustable interest rate and interest only payments.  (*Id.* at ¶¶ 8-9).

---

[1] *See* Map, *available at*:  http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/.       The Court may take judicial notice of publicly recorded documents and facts within common knowledge.  *Bishop v. Byrne*, 265 F. Supp. 460, 464 (S.D. W. Va. 1967) ("Court will take judicial notice of that which is common knowledge"); *see also Demetry v. Lasko Prods.*, 284 Fed. Appx. 14, 15 (4th Cir. 2008) (holding that a court may take judicial notice of publicly recorded documents and documents integral to the allegations in plaintiff's complaint).

2.      Plaintiffs are highly sophisticated consumers.  Plaintiff James J. Rowe is a judge in the Circuit Court for Greenbrier County, West Virginia.[2]  Plaintiff Sharon H. Rowe is an accomplished businesswoman who has served on the Boards of Directors of several banks, including Greenbrier Valley National Bank, Horizon Bancorp, Inc., and City National Bank.[3]

3.      Plaintiffs retained the law firm of Laurich, Deeb & Wiseman, P.A., located in Hilton Head, South Carolina ("Laurich, Deeb & Wiseman"), to handle the closing of the Loan contracts, appointing Laurich, Deeb & Wiseman as Plaintiffs' attorney-in-fact.  (*Id.* at ¶ 12).

4.      On August 12, 2005, Laurich, Deeb & Wiseman, in its capacity as attorney-in-fact for Plaintiffs, signed the Adjustable Rate Note ("Note I"), as well as two Note addendums titled "Addendum to Note" and "Interest-Only Addendum to Adjustable Rate Promissory Note" (the "Addendums") (*See* Am. Compl. <u>Ex. A</u>).

5.      Note I provided for an initial interest rate of 6.625%.  (Am. Compl. <u>Ex. A</u> at ¶ 2). Pursuant to Note I, the interest rate was to be adjusted every six months beginning on September 1, 2010 by adding 2.25% to the then-current Libor Index.  (*Id.* at ¶ 4 (A)-(C)).  The interest rate changes were subject to an interest rate ceiling of 12.625% and a floor of 2.25%.  (*Id.* at ¶ 4(D)).

6.       On August 19, 2005, Laurich, Deeb & Wiseman mailed the signed loan documents, including Note I and the Addendums, to Plaintiffs.  (Am. Compl. ¶ 12, <u>Ex. D</u>).  The cover letter from Laurich, Deeb & Wiseman advised Plaintiffs that the matter was now closed. (Am. Compl. <u>Ex. D</u>).

7.      On September 19, 2005, before the first payment was due on October 1, 2005, Laurich, Deeb & Wiseman sent a facsimile to Plaintiffs titled "New Original Note" encouraging Plaintiffs to call with any questions.  (Am. Compl. <u>Ex. E</u>).  The facsimile enclosed a copy of a

---

[2] http://www.courtswv.gov/lower-courts/counties/greenbrier.html.
[3] http://www.forbes.com/profile/sharon-rowe/.

different Adjustable Rate Note dated August 12, 2005 and signed by Laurich, Deeb & Wiseman as attorney-in-fact for Plaintiffs ("Note II").  (*Id.*).

8.      Laurich, Deeb & Wiseman also executed Addendums consistent with the terms of Note II.  A copy of the Addendum and Interest-Only Addendum to Adjustable Rate Promissory Note are attached hereto as **Exhibits A** and **B**, respectively.

9.      Note II differs from Note I in three ways.  First, it provides for an interest rate calculation by adding 2.75% to the Libor Rate, as opposed to 2.25% in Note I.  (Am. Compl. Ex. B ¶ 4(C)).  Second, it sets forth the interest rate floor of 6.625%, as opposed to 2.25% in Note I. (*Id.* at ¶ 4(D)).  Third, Note II is a copy of the original governing debt instrument, as evidenced by the signed endorsements.  (*Id.*).

10.     The rates are listed in clear and unambiguous terms on page two of Note II and on page one of each Addendum.  (Am. Compl. Ex. E & Ex. A-B attached hereto).

11.     Note II is secured by a mortgage dated August 12, 2005 signed by Laurich, Deeb & Wiseman (the "Mortgage").  A copy of the Mortgage securing Note II on the Property is attached hereto as **Exhibit C**.[4]

12.     For the next seven years, Plaintiffs' Loan was serviced by Defendant Aurora. (Compl. ¶¶ 17-18).  During that time, the value of the Plaintiffs' Property decreased, and Plaintiffs unsuccessfully listed it for sale several times but were unable to sell the Property.[5]  The

---

[4] On a motion to dismiss, the court may consider documents referred to in the complaint but not annexed to it.  *Demetry*, 284 Fed. Appx. at 15; *Forshey v. Jackson*, 222 W. Va. 743, 747 (W. Va. 2008).

[5] *See* Price History for the Property, *available at*: http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/

4

Property's current estimated market value is approximately $596,000.[6]   As a result, Plaintiffs currently owe more than the Property is worth.

13.     On July 15, 2012, the servicing of the Loan was transferred to Nationstar.  (Am. Compl. ¶ 18).  Plaintiffs missed their February 1, 2013 and March 1, 2013 payments.  On February 15, 2013, Nationstar notified Plaintiffs of an interest rate change from 6.625% to 4.625%.  (Am. Compl. Ex. G).  On March 18, 2013, Nationstar notified Plaintiffs that they were two months behind on their Loan (attached hereto as **Exhibit D**).

14.     On March 25, 2013, Nationstar notified Plaintiffs of an interest rate change from 4.625% to 6.625%.  (Am. Compl. Ex. F).  Nationstar's correspondence explained that the rate calculation was arrived at by adding 2.75% to the current LIBOR rate and applying the interest rate floor of 6.625% in accordance with Note II.  (*Id.*)

15.     On May 15, 2013, Plaintiffs disputed the interest rate increase and requested a refund or credit on the "interest overpayments."  (Am. Compl. ¶ 22, Ex. G).

16.     Plaintiffs then defaulted on their obligations under the Loan contracts, and are approximately six (6) months delinquent on their payments.  Nationstar notified them of default via correspondence dated June 17, 2013.  (Am. Compl. ¶ 21, Ex. H).  As explained in this correspondence, the owner of the Loan is Citibank, M.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6.  (*Id.*)

17.     On June 24, 2013, Nationstar wrote to Plaintiffs describing in detail its methodology for calculating the interest rate.  (Am. Compl. Ex. I).  Nationstar declined a request for refund because it applied the terms of Note II, executed by Plaintiffs' attorney-in-fact and dated August 12, 2005, pursuant to which the interest rate is not to decrease below 6.625%.  (*Id.*)

---

[6] *See* Z-Estimate, *available at*:  http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/.

18.     Plaintiffs filed this lawsuit on August 1, 2013.  (ECF # 1).  On September 20, Plaintiffs filed an Amended Complaint to add a claim for usury.  (ECF # 9).

## ARGUMENT[7]

## I.     PLAINTIFFS FAIL TO STATE A VIABLE CLAIM

### A.     Plaintiffs' TILA Claims (Count I) Fail as a Matter of Law

Plaintiffs claim that Aurora and Nationstar are liable under TILA for failure to correctly disclose material terms of the Loan, including the "amount financed," the "finance charge," the "annual percentage rate," and other disclosures pursuant to 15 U.S.C § 1638(a)(2)(A),(3),(4) and 12 C.F.R §§ 226.4 and 226.18.  (Am. Compl. ¶ 29(a)-(d)).  Plaintiffs also allege that they effectively rescinded their Loan by sending a notice of their rescission to Nationstar on May 15, 2013, and ask that the Court declare the Mortgage void, give the Property to Plaintiffs free and clear, along with statutory penalties, actual damages, and attorney's fees.  (*Id.* ¶¶ 30, 37).

Plaintiffs' TILA claim fail as matter of law for the following reasons: (1) TILA does not apply to loan servicers; (2) Plaintiffs' request for rescission under TILA is time-barred; (3) Plaintiffs' request for an award of monetary damages under TILA is time-barred; and (4) Plaintiffs' failure to allege intent to tender the loan proceeds is fatal to their TILA claim.

#### 1.     TILA Does Not Apply to Loan Servicers.

Under the plain language of the statute, "*the creditor* shall disclose" material loan terms. 15 U.S.C § 1638(a).  TILA defines "creditor" as a "person who **both** (1) regularly extends … consumer credit …, **and** (2) is the person to whom the debt arising from the consumer credit

---

[7] This Court is well acquainted with the standard on a motion to dismiss.  "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action[,]" or "naked assertions devoid of further factual enhancement" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.

transaction is **initially payable on the face of the evidence of indebtedness** …"   15 U.S.C. § 1602(g) (emphasis added).

Neither Aurora nor Nationstar is a "creditor" within the meaning of Section 1602. Indeed, Plaintiff does not allege that either Aurora or Nationstar extended the Loan, own it, or have ever owned it.  Instead, according to Plaintiffs' own allegations and as expressly reflected in the Note, TM Capital originated the Loan, and Aurora and Nationstar are merely loan servicers.  (Am. Compl. ¶¶ 8 <u>Ex. E</u>).   Therefore, TILA does not apply.

Plaintiffs vaguely assert that they are entitled to rescind their Loan as against assignees of the original creditor and cite 15 U.S.C. § 1641(c) in support of their assertion.  (Am. Compl. ¶ 30).  To the extent Plaintiffs imply that Aurora and/or Nationstar are such assignees, they are incorrect.  TILA expressly excludes servicers from the definition of "assignee."  "A servicer of a consumer obligation arising from a consumer credit transaction shall *not be treated as an assignee of such obligation* for purposes of [§ 1641] *unless the servicer is or was the owner of the obligation*.  15 U.S.C. § 1641(f)(1) (emphasis added).[8]   Aurora and Nationstar are not and were not owners of the Loan, and Plaintiffs do not allege that they are or ever were.  On the contrary, the owner of the Loan is Citibank, M.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6.  (Am. Compl. <u>Ex H</u>).  Therefore, Plaintiffs' TILA claim fails as a matter of law.

### 2.      TILA Claim for Rescission Is Time-Barred.

Under TILA, consumers have the right to rescind the transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the

---

[8] *See also Horton v. Country Mortgage Services, Inc.*, 2010 U.S. Dist. LEXIS 67, at *3 (N.D. Ill. 2010) (TILA expressly disclaims any liability for mere servicers "unless the servicer is or was the owner of the obligation"); *Pelayo v. Home Capital Funding*, 2009 U.S. Dist. LEXIS 44453, *12 (S.D. Cal. May 22, 2009) (same).

information and rescission forms required [by TILA], whichever is later." 15 U.S.C. § 1635(a). If the notice of the right to rescind or material disclosures are not provided or are deficient, the deadline to rescind is extended to *three years "after the date of consummation of the transaction." Id.* § 1635(f) (emphasis added). Although consumer does not have to file a TILA claim within the three-year period, consumer "must … notify her lender that she is exercising her right of rescission within the three-year limit." *Wolf v. Fannie Mae*, 512 Fed. Appx. 336, 340 (4th Cir. 2013); *accord Gilbert v. Residential Funding LLC*, 678 F.3d 271, 278 (4th Cir. 2012) (holding the right to rescind gets extinguished three years after loan closing).

Here, Plaintiffs' claims are unquestionably time-barred. The Loan closing took place on August 12, 2005. According to Plaintiffs' own allegations they did not make a rescission request until May 15, 2013—almost eight years after the Loan closing and almost five years after the expiration of the three-year statute of limitations.

### 3.    TILA Claim for Damages is Time-Barred.

Unlike the three-year period-long entitlement to a loan rescission, TILA's claims for money damages must "be brought … within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Gilbert*, 678 F.3d at 278 (holding plaintiff's request for money damages under TILA is barred by the one-year statute of limitations); *McLeod v. PB Inv. Corp.*, 492 Fed. Appx. 379, 387 (4th Cir. 2012) (same); *Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 684 (S.D. W. Va. 2002) (same). Here, Plaintiffs filed their TILA-based request for money damages almost eight years after the loan closing during which the alleged failure to make the mandatory loan disclosures took place. Therefore, Plaintiff's claim is time-barred.

### 4.    Plaintiffs Fail to Allege Intent or Ability to Tender Loan Proceeds.

TILA establishes a framework by which a loan is to be rescinded. Namely, the borrower must return to the lender the loan proceeds, less any payments that had been made. 15 U.S.C.

§ 1635(b); *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) (refusing to allow rescission of the loan when the borrowers were not prepared to tender the loan balance and holding that the lender was not required to release the security interest in the borrower's home under such circumstances).  Accordingly, courts in the Fourth Circuit hold that plaintiff's TILA claim must be dismissed if plaintiff fails to plead her intention to tender back the loan proceeds.[9]

Here, Plaintiffs' Amended Complaint is completely devoid of **any** allegations that Plaintiffs intention or ability to return the Loan proceeds.  "In essence, the [Plaintiffs] claim the right to simply walk away with a windfall … without any further obligation.  Plaintiffs seek a windfall that is neither equitable nor legally permitted.

**B.**   **Breach of Contract Claim (Count II) Fails as a Matter of Law.**

**1.**   **Choice of Law**

In deciding which law applies to state law claims, a federal court must apply the choice of law rules of the forum state.  *General Assur. of Am., Inc. v. Overby-Seawell Co.*, 2013 U.S. App. LEXIS 14436 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Because this action is pending in West Virginia, the Court must apply West Virginia choice of law rules.

The West Virginia Supreme Court addressed the choice of law question in the context of a home loan in *Joy v. Chessie Employees Federal Credit Union*, 411 S.E.2d 261 (W. Va. 1991):

> Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the

---

[9] *Brown v. HSBC Mortg. Corp.*, No. 1:10-cv-1427, 2011 U.S. Dist. LEXIS 80943, *9-11 (E.D. Va. July 22, 2011) (dismissing plaintiff's TILA claim where plaintiff failed to allege that she is willing to tender the proceeds of the loan); *Lenhart v. Bank of Am., N.A.*, No. 2:12-cv-4184, 2013 U.S. Dist. LEXIS 61645, *15-16 (S.D. W. Va. Apr. 29, 2013) (Copenhaver, J.) (stating "the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due," and holding that a TILA claim by plaintiffs *who have alleged intention to tender* will not be dismissed for failure to plead *ability* to tender).

> parties have not made a choice of applicable law in the contract itself; and (2) the
> law of the other state does not offend our public policy.

411 S.E.2d at 265.  In *Joy*, plaintiffs owned land located in West Virginia.  However, plaintiffs entered into a loan agreement and executed the deed of trust at the defendant's office in Maryland.  *Id.* at 119, 411 S.E.2d at 262.  Applying the above rule, the Court held that the law of Maryland governed the loan agreement (which was separate from the deed of trust) because the plaintiffs "went to Maryland and contracted for a loan with a credit union located in Maryland, the payments on which were to be made in Maryland."  *Id.* (emphasis deleted).

Here, the Mortgage expressly provides that it is governed by the law of the jurisdiction where the Property is located.  (Mortgage, ¶ 16).  Therefore, South Carolina law applies to the Mortgage.  The Note is silent on the choice of law question, but the controlling precedent in *Joy* resolves the issue.  It is undisputed that Plaintiffs "went" to South Carolina by appointing counsel as their attorney-in-fact there and authorizing that attorney to execute the Loan contracts at the closing in South Carolina.  (Am. Compl. ¶ 12)  The Loan proceeds were disbursed in South Carolina to purchase the Property, which is located in South Carolina.  Therefore, South Carolina law governs Plaintiffs' Loan contract and their claim arising from the contract.

### 2.    Aurora and Nationstar Are Not Party to the Loan Contract.

It is axiomatic that an action for breach of contract cannot be maintained against a non-party to the contract.[10]  Because neither Aurora nor Nationstar are parties to Note I, Note II, or the Mortgage, Plaintiffs cannot maintain an action for breach of contract against them and Plaintiffs' claim should be dismissed.

---

[10] *Norman Pulliam & Patriot's Plantation II, LLC v. Clark*, No. 4:11-cv-03047, 2012 U.S. Dist. LEXIS 70669, *8-9 (D.S.C. May 21, 2012) (dismissing plaintiff's claim for breach of contract because defendant was not a party to the contract); *Stewart v. State Farm Fire & Cas. Co.*, 2012 U.S. Dist. LEXIS 9022, 4-5 (D.S.C. Jan. 26, 2012) ("There is no evidence here that Jordan was a party to the contract … For these reasons, Stewart cannot possibly maintain an action against Jordan for breach of contract or breach of the duty of good faith and fair dealing.").

3. **Plaintiffs' Failure to Read Note II Does Not Provide a Basis for a Valid Breach of Contract Claim.**

Regardless of the choice of law rules, it a fundamental tenant of contract law that the contracting parties have a duty to read the contract and that failure to do so does not excuse a party from being bound. *See, e.g.*, *Finney v. Lincare, Inc.*, 2:11-cv-1400, 2012 U.S. Dist. LEXIS 60444, *25 n.19 (D.S.C. May 1, 2012) (dismissing plaintiff's breach of contract claim where plaintiff failed to read the contract); *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33, 36 (W.Va. 1986) ("[a] party to a contract has a duty to read the instrument." ); *Knapp v. Am. Gen. Finance Inc.*, 111 F. Supp. 2d 758, 763 (S.D. W. Va. 2000) ("one who signs or accepts a written instrument will normally be bound in accordance with its written terms").

In this case, using the language by the United States District Court of South Carolina, "[Plaintiffs'] contention that [they were] unaware of [the] changes [to the Notes] does not affect their applicability to [Plaintiffs].  [Plaintiffs] admit[] that [they] had access to this material … It is [their] responsibility to read such documents, and the fact that [they] failed to do so does not provide a basis for a breach of contract claim." *Finney*, 2012 U.S. Dist. LEXIS 60444 at *25.  If parties were not bound by the duty to read the contracts they enter, then any party could escape contractual obligations by claiming he failed to read the contract.  Therefore, Plaintiffs' claim for breach of contract should be dismissed.

C. **WVCCPA Claims for Unconscionability (Count III) Fail to State a Claim.**

1. **WVCCPA Does Not Apply to Plaintiff's Loan Contract**

Plaintiffs' claim for unconscionable contract under the WVCCPA arises from Defendants' alleged "attempt[s] to change the terms and conditions of the original Adjustable Rate Note" and to "enforce unauthorized fees and charges."  (Am. Compl. ¶¶ 43-53).  Plaintiffs' claims under the WVCCPA fail as a matter of law because the WVCCPA is inapplicable to

Plaintiffs' Loan contract under the controlling precedent in *Joy*.  In *Joy*, the Supreme Court of Appeals of West Virginia held that the WVCCPA does not apply where choice of law principles dictate that the law of another state controls the loan agreement.  186 W. Va. at 122.  In *Joy*, plaintiffs were West Virginia residents who entered into a loan transaction in the state of Maryland with a Maryland based lender secured by a deed of trust on their property in West Virginia.  *Id*. at 119.  The plaintiffs asserted that the lender violated the WVCCPA by failing to notify them of their right to cure default.  *Id*.  The Court held that the WVCCPA was inapplicable because Maryland law governed the loan transaction.  *Id*. at 122.

Here, the case is even stronger for South Carolina choice of law than in *Joy*.  Plaintiffs entered into a loan transaction in South Carolina, secured by the Property located in South Carolina, and signed the Mortgage expressly governed by the law of South Carolina.  (Ex. C, Mortgage ¶ 16).  Plaintiffs' claims regarding improper fees and charges under the Loan are governed by South Carolina law, as are the parties' rights and obligations under the Loan contract.  Therefore, Plaintiffs' WVCCPA claim fails as a matter of law.

### 2.    Plaintiffs Cannot State a Claim for Unconscionable Contract

Even if South Carolina law did not apply to the Loan contract, Plaintiffs cannot state a claim for unconscionable contract under West Virginia law.    In West Virginia, unconscionability "requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'"  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 603 (1986)). Here, Plaintiffs James and Sharon Rowe are a Judge and a member of the Board of Directors of several banks, respectively.  In addition to their own legal training and business acumen, they appointed legal counsel to handle the Loan closing for the purchase of their second home, a

vacation property in Hilton Head, South Carolina.  These allegations directly contradict the first prong of the test that there must be gross inadequacy of bargaining power.

The second prong cannot be met either because Plaintiff cannot claim unconscionability based on the plain and unambiguous language of the contract their attorney-in-fact signed, which they chose not to read, and failed to contest at any time for nearly eight years.  *Reddy v. Community Health Found. of Man*, 171 W. Va. 368, 373 (1982) ("Contracts are reduced to writing so that there can be no subsequent argument concerning the terms of an agreement. A person who fails to read a document to which he places his signature does so at his peril.").

Critically, Defendants Aurora and Nationstar did nothing to induce Plaintiffs' Loan, and there are no allegations that the original lender TM Capital unconscionably induced Plaintiffs either.  Defendants Aurora and Nationstar neither originated the Loan nor prepared the Loan documents.  Defendants are loan servicers and are bound to enforce the terms of the Loan as written.  Plaintiffs' WVCCPA claim should be dismissed.

> D.   **Fraud Claim (Count IV) Fails as a Matter of Law.**
>
> 1.   **Fraud Claim Is Time-Barred.**

Plaintiffs' fraud claims are subject to a two-year statute of limitation.  W. Va. Code § 55-2-12; *CSX Transp., Inc. v. Gilkison*, No. 5:05-cv-202, 2013 U.S. Dist. LEXIS 5282 *13 (N.D. W. Va. Jan. 14, 2013) (fraud claims are governed by the two-year "catch all" statute of limitation in W. Va. Code § 55-2-12).  The applicability of § 55-2-12 to a loan agreement has already been ruled on in *Byrd v. Option One Mortgage Co.*, where this Court found fraud claims relating to origination and closing were time-barred.  *Byrd*, No. 2:04-1058, Memorandum Opinion, attached hereto as **Exhibit E**, p. 35 (S.D. W.Va. Apr. 12, 2007); *see also Staats v. Bank of America, N.A.*, No. 3:10-cv-68, 2010 U.S. Dist. LEXIS 142886 *26 – 27 (N.D. W.Va. Nov. 4,

2010) (dismissing plaintiffs' fraud claim that the lender intentionally misrepresented the terms of the transaction, including the monthly payment amount, as time barred).[11]

Here, Plaintiffs executed Note II in August 2012 that conspicuously discloses the interest rate floor of 6.625% and that the interest rate is calculated by adding 2.75% to the current Libor rate. (Am. Compl. <u>Ex. E</u> p. 2). The addendums to Note II, also signed by Plaintiffs' attorney-in-fact, likewise disclose the interest rate terms in plain and unambiguous terms. (<u>Ex. A</u>, Addendum at p. 1; <u>Ex. B</u>, Interest-Only Addendum, at p. 1) Plaintiffs admit receiving this Note in September 2005 before making the first Loan payment, due on October 1, 2005. Plaintiffs are highly educated consumers, experienced in financial matters, and the South Carolina attorney appointed as their attorney-in-fact executed the documents for them. Plaintiffs' fraud claim, filed eight years later, is time-barred.

### 2.     Plaintiffs Do Not and Cannot Plead Justifiable Reliance.

The Fourth Circuit held that a party claiming fraud must plead with particularity facts showing that the alleged detrimental reliance on the misrepresentations was "reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999); *Patrick v. Teays Valley Trs.*, LLC, No. 3:12-cv-39, 2012 U.S. Dist. LEXIS 170395, *63-64 (N.D. W. Va. 2012) (dismissing plaintiffs' fraud claim, finding plaintiffs' conclusory allegations of justifiable reliance on defendants' foreclosure threats were insufficient to state a plausible claim for relief).

Here, Plaintiffs do not and cannot plead that they justifiably relied on the Loan terms expressed in Note I when they had in their possession Note II signed by their attorney-in-fact. Further, there is nothing in the Amended Complaint to suggest that Plaintiffs relied on any

---

[11] In *Staats*, Plaintiffs voluntarily withdrew their fraud claim insofar as the claim seeks monetary relief. *Staats*, 2010 U.S. Dist. LEXIS at *26. Notwithstanding this, the Court, applying the equitable doctrine of laches, dismissed Plaintiffs' fraud claim for failure to bring their claim within two (2) years after discovering that their monthly payment was more than expected.

statements by Aurora or Nationstar. With respect to Aurora, Plaintiffs make no allegations of wrongdoing at all. With respect to Nationstar, Plaintiffs expressly aver that they did **not** rely on Nationstar's calculation of the interest rate change. Therefore, even if taken as true, Plaintiffs' allegations fail to show justifiable reliance, and Plaintiffs' claim for fraud should be dismissed.

### 3. Plaintiffs Fail to Plead Fraud with Particularity.

The Federal Rules require claimants to meet a heightened pleading standard when alleging a claim for fraud. Claimants must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Stowe Woodward, LLC v. Sensor Prods., Inc.*, 230 F.R.D. 463, 466 (W.D. Va. Sept. 7, 2005) ("The heightened pleading requirements of Rule 9(b) are meant to 'deter the filing of charges of fraud as a pretext for discovery of unknown wrongs.'").

Where multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Bluestone Coal Corp. v. CNX Land Res., Inc.*, No. 1:07-00549, 2007 U.S. Dist. LEXIS 98528 (S.D.W. Va. Nov. 16, 2007) (Faber, J.); *see also Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (affirming district court's dismissal of complaint because complaint referenced "defendants" generally, not action of specific defendants regarding the alleged fraud and thus failed to meet the pleading requirement).

Here, Plaintiffs allege fraud against "Defendants" without explaining how named Defendants Aurora and Nationstar could have perpetrated the alleged fraud when they did not participate in Loan closing or originate the Loan. To the extent Plaintiffs base their fraud claim on the enforcement of the terms of Note II, Plaintiffs still fail to satisfy the heightened pleading

standard because Plaintiffs lump both Defendants together and do not explain each Defendant's participation in the alleged fraud.[12]

      **E.**    <u>**Usury Claim (Count V) Fails as a Matter of Law**</u>.

      Plaintiffs' claim for usury under W. Va. Code § 47-6-6 fails as a matter of law because the choice of law principles dictate that the law of South Carolina governs the terms of the Loan. Regardless, even if West Virginia law applied to the Loan contract, Plaintiffs fail to state a claim. The West Virginia Code prohibits lenders and creditors from charging interest rates "at a greater rate of interest than is permitted by law."   W. Va. Code § 47-6-6.   Plaintiffs argue that Defendants made usurious charges in violation of "West Virginia *contract* law," i.e. Defendants calculated the interest rate *in accordance with* the terms of Note II while Plaintiffs contend that the terms of Note I govern their Loan.   (Am. Compl. ¶ 61).

      First, Plaintiffs' reading of the statute is impermissibly broad and seeks to turn any breach of loan agreement action into a usury claim even when the loan agreement at issue charges lawful interest rates.   Second, Plaintiffs do not allege that Aurora or Nationstar ever charged them the interest rate greater than the maximum lawful rate of 18%.   Instead, Plaintiffs complain of the 6.625% interest rate, provided in the Loan contract they signed by their attorney-in-fact.   Third, section 47-6-6 applies only to the original lender, creditor, and a holder not in due course: "the borrower or debtor may … recover ***from the original lender or creditor or other holder not in due course*** an amount equal to four times all interest agreed to be paid."   Fourth, the doctrine of laches bars Plaintiffs' usury claim.   Plaintiffs were in possession of Note II at

---

[12] Plaintiffs' claim for fraud is also barred by the economic loss doctrine, which is well established in West Virginia law and requires a tort claim (such as fraud) to be based on breach of a duty independent of a contract. *Ballard v. Fifth Third Bank*, No. 2:10-cv-00817, 2010 U.S. Dist. LEXIS 86578, *4-6 (S.D. W.Va. Aug. 23, 2010) (holding a party "may not pursue a tort claim independent of the contract when there is no independent duty of care outside the contract"); *White v. AAMG Constr. Lending Ctr.*, 700 S.E.2d 791, 798 (W. Va. 2010) (dismissing borrower's tort claim against the lender).

least since September 19, 2005 and were thus on notice of their potential usury claim. However, they sat on their rights for almost eight years and are now barred by their own delay from asserting this claim. *See Hall v. Mortgage Sec. Corp.*, 119 W. Va. 140, 147-150 (1937) (holding that the doctrine of laches applied to prevent "hardship and injustice upon innocent persons when such hardship could have been avoided without impairing in the least the debtors' right).

## II.   PLAINTIFFS FAILED TO JOIN INDISPENSABLE PARTIES

Federal Rule of Civil Procedure 19 creates a two-step inquiry: "first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence.   If it cannot, the party is indispensable and the action should be dismissed." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-918 (4th Cir. 1999). "A court must examine the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it." *Id.*

In analyzing failure to join indispensable parties in an action concerning an interest in real property, the District Court for the Northern District of West Virginia found compelling the rationale earlier announced by the Supreme Court of Appeals of West Virginia:

> When a court proceeding directly affects or determines the scope of rights or interests in real property, ***any persons who claim an interest in the real property at issue are indispensable parties to the proceeding***. ***Any order or decree issued in the absence of those parties is null and void.***

*First United Bank & Trust v. Square at Falling Run, LLC*, No. 1:11-cv-31, 2011 U.S. Dist. LEXIS 44409, *17 (N.D. W. Va. Apr. 25, 2011) (quoting Syl. Pt. 2, *O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800 (1997)) (emphasis added).

Moreover, the courts agree that in an action for rescission of a transaction the parties to the transaction are indispensable. *See, e.g., Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*,

973 F.2d 301, 305-06 (4th Cir. 1992) (parties to a contract are necessary parties to a suit on that contract); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788-789 (D.C.Cir. 1983) ("Numerous cases hold that an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.") (internal citations omitted).

The crux of Plaintiffs' Amended Complaint is claims arising from the origination of the Loan contract to which neither Aurora nor Nationstar are parties.  In contrast, the original lender and contracting party, TM Capital, Inc., is not named as a party in this action.  Similarly, Plaintiffs failed to join the current owner of the Loan.  The Court is not in a position to make a determination with respect to title to the Property because such determination will directly affect or determine the scope of rights or interests in the Property, and all persons who claim an interest in the Property have not been joined as parties to the action.  If the Court were to adjudicate the governing terms of the Note or release the security interest in the Property, the Court would prejudice Defendants as well as the originator, closer, and owner of the Loan.

Further, joinder of the originator and closer are not feasible because of Plaintiffs' delay in filing their claims.  TM Capital, Inc. was dissolved in 2009.[13]  However, even if TM Capital still existed, the Court is unlikely to have personal jurisdiction over TM Capital, which has no registered agent in West Virginia and does appear to have conducted any activity to West Virginia.[14]  Further, Plaintiffs' attorney who signed the Loan documents on Plaintiffs' behalf, Eugene J. Laurich, is now deceased and, therefore, cannot be joined in this action or be available

---

[13]  Public Records of the Office of South Carolina Secretary of State, *available at*: http://www.sos.sc.gov/index.asp?n=18&p=4&s=18&corporateid =65444
[14]  Public Records of the Office of West Virginia Secretary of State, *available at*: http://apps.sos.wv.gov/business/corporations/ index.aspx

to testify.[15]   Rule 19(b) unequivocally mandates dismissal of the Amended Complaint.  The only two parties who actually participated in and conducted the Loan closing cannot be joined.  This is the quintessential example of the prejudice that statutes of limitation are designed to avoid and which Defendants will suffer if the Court does not enforce those statutory periods.  Therefore, Plaintiffs' action should be dismissed with prejudice.

## III.   LOCAL ACTION DOCTRINE PREVENTS ADJUDICATION IN THIS COURT

The "local action" doctrine bars lawsuits effecting the title to or security interest in real estate that is located outside of the forum state.[16]   Courts nationwide in actions for seeking mortgage cancellation hold that such actions are local and must be brought where the subject property is located.[17]   Importantly, the local action doctrine applies where the subject lawsuit combines a request for relief affecting real estate with a request for monetary relief.[18]

---

[15] Order by the South Carolina Supreme Court, *In the Matter of Eugene J. Laurich, Deceased,* p. (March 7, 2012), *available at*: http://www.judicial.state.sc.us/opinions/advSheets/no92012.pdf) (appointing counsel to protect the interests of Mr. Laurich's clients).

[16] *See, e.g.*, *Elk Garden Co. v. T. W. Thayer Co.*, 179 F. 556, 557 (4th Cir. 1910) (holding that "[e]jectment is a local action, such as can be maintained only in the district where the land lies); *Humble Oil & Refining Co. v. Copeland*, 398 F.2d 364, 367-368 (4th Cir. 1968) (finding interpleader action by rival claimants to a deceased's estate was a local action); *Baltimore Bldg. & L. Asso. v. Alderson*, 90 F. 142, 146-147 (4th Cir. 1898) (a lawsuit asking the court to order sale of realty outside of West Virginia was a local action).

[17] *United States SEC v. Alanar, Inc.*, 2011 U.S. Dist. LEXIS 35224, *9-10 (S.D. Ind. Mar. 31, 2011) (finding an action by a property owner against a lender who is wrongly asserting a security interest in the property is a local action and the proper venue is where the property is located); *Julio v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 79446, *9-11 (N.D. Cal. July 21, 2011) (holding the venue in California is improper where plaintiffs are seeking cancellation of mortgage and foreclosure on the property in Hawaii); *Corriveau v. Tier Techs., Inc.*, 2002 U.S. Dist. LEXIS 13596 (D. Conn. July 12, 2002) (holding that because the property was located in Connecticut, any action to discharge that mortgage was to be brought in Connecticut); *Lafayette Apartments, Inc. v. Meadow Brook Nat'l Bank*, 416 F.2d 301 (5th Cir. 1969) (action seeking cancellation and erasure of mortgage was local in nature and venue was proper where property was located).

[18] *Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1158 (C.D. Cal. 2010) (holding that a lawsuit that requests rescission of a mortgage transaction and termination of security interest is a local action even though the complaint also asks for money damages); *Hayes v. Gulf Oil Corp.*,

This case is a classic example of a local action that has to be brought in the forum where property is located.  Here, Plaintiffs request that the Court order cancellation of the Mortgage and release of the security interest in the Property.  This request is contrary to the fundamental principle that the Court's *in rem* jurisdiction is "coterminous with the state's political boundaries," *Julio*, 2011 U.S. Dist. LEXIS 79446, *9-11; *see also Hanson v. Denckla*, 357 U.S. 235, 246 (1958) ("The basis of jurisdiction over property is the presence of the subject property within the territorial jurisdiction of the forum state.").  Therefore, this Court does not have jurisdiction to issue such an order regarding South Carolina property.

Even if the Court had jurisdiction to grant the requested relief, the lawsuit regarding a South Carolina property, a South Carolina Loan governed by South Carolina law, and closed in South Carolina, is better adjudicated in South Carolina.[19]  Therefore, Plaintiffs' lawsuit is barred by the "local action doctrine," and it should be dismissed or transferred to the federal district court in South Carolina where the Property is located.

## CONCLUSION

For all the reasons stated above, Defendants Aurora Commercial Corp., f/k/a Aurora Loan Services, Inc. and Nationstar Mortgage LLC, respectfully request that the Court grant their Motion to Dismiss and dismiss the Amended Complaint with prejudice and grant such other and further relief that the Court deems appropriate and just.

---

821 F.2d 285, 287 (5th Cir. 1987) (holding an action for trespass to land, although an in personam action seeking monetary relief, is nevertheless local in nature).

[19] *See, e.g.*, *Kavouras v. Fernandez*, 737 F. Supp. 477, 478-79 (N.D. Ill. 1989) (court seeks to avoid "the untenable position of purporting to affect real estate title records in [a different state], purporting to require local officials there (over whom this Court clearly has no jurisdiction) to conduct a foreclosure sale or record its results - and it is scarcely necessary to extend the list of intolerable consequences"); *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) ("The local action rule prevents courts unfamiliar with local property rights and laws from interfering with title to real property which must be recorded under a unitary set of rules to keep it free of conflicting encumbrances").

Dated: November 5, 2013               Respectfully submitted,

**AURORA COMMERCIAL CORP., f/k/a
AURORA LOAN SERVICES, INC.,
NATIONSTAR MORTGAGE, LLC,**

By:    /s/ Jason E. Manning           

John C. Lynch (W. Va. Bar No. 6627)
Jason E. Manning (W. Va. Bar No. 11277)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of November, 2013, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

### Counsel for Plaintiffs

L. Lee Javins, II, Esq. (ljavins@bbjlc.com)
Guy R. Bucci, Esq. (kpaxton@bbjlc.com)
Mark A. Barney, Esq. (mbarney@bbjlc.com)
Bucci, Bailey & Javins, L.C.
213 Hale Street
P.O. Box 3712
Charleston, WV 2533

/s/ Jason E. Manning
Jason E. Manning (W. Va. Bar No. 11277)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: jason.manning@troutmansanders.com

21291684v3