IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JAMES J. ROWE and
SHARON H. ROWE,

     Plaintiffs,

v.                          Civil Action No. 5:13-21369

AURORA COMMERCIAL CORP. and
NATIONSTAR MORTGAGE, LLC,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

     Pending before the court are defendants' motion to dismiss (Doc. No. 11) and plaintiffs' motion for leave to amend under Rule 15(a) (Doc. No. 23). For the reasons that follow, the motion to dismiss is granted, and the motion for leave to amend is granted in part and denied in part.

**I.   Background**

     Plaintiffs, James and Sharon Rowe, purchased a home in Hilton Head, South Carolina on or about August 12, 2005. Doc No. 9 at 2. Plaintiffs retained the law firm of Laurich, Deeb & Wiseman, P.A. to handle the closing of the loan contracts and appointed the firm as their attorney-in-fact. Id. at 3. To finance this purchase, plaintiffs obtained a loan from TM

1

Capital, Inc. ("TM Capital") for $626,250.  Id.  On August 12,
2005, plaintiffs' attorney-in-fact signed an Adjustable Rate
Note ("Note I").  Id. at 3.  Note I provides for an initial
annual interest rate of 6.625%.  Doc. No. 9-1 at 1.  The note
further provides that the 6.625% rate was subject to a change
beginning in September 2010 and every six months thereafter by
adding 2.25% to the current LIBOR six-month index.[1]  Id. at 1-2.
Such changes to the interest rate were subject to a ceiling of
12.625% and a floor of 2.25%.  Id. at 2.  On August 19, 2005,
plaintiffs' attorney-in-fact mailed plaintiffs the real estate
documents including Note I along with accompanying
correspondence indicating that the matter was closed.  Doc. No.
9 at 3; Doc. No. 9-4.

On September 19, 2005, before the first payment was due on
October 1, 2005, plaintiffs' attorney-in-fact sent a facsimile
to plaintiffs.  The cover sheet stated that the fax concerned a
"New Original Note" and encouraged plaintiffs to call if they
had any questions.  Doc. No. 9-5 at 1.  The fax contained a
different Adjustable Rate Note ("Note II") which was also dated
August 12, 2005 and signed by plaintiffs' attorney-in-fact.  Id.
at 2-9.  Note II is identical to Note I except for two
differences.  First, Note II provides for an interest rate

_____

[1] This index is published by the Wall Street Journal and is also
referred to as the "Current Index" throughout Note I.

calculation by adding 2.75% to the Libor index, as opposed to the 2.25% in Note I.  <u>Id.</u> at 3.  Second, it sets forth an interest rate floor of 6.625%, as opposed to the 2.25% floor in Note I.  <u>Id.</u>

From 2005 until July 15, 2012, plaintiffs' loan was serviced by defendant Aurora Commercial Corp. ("Aurora").  Doc. No. 9 at 4-5.  On July 15, 2012, the servicing of the loan was transferred to defendant Nationstar Mortgage, LLC ("Nationstar").  <u>Id.</u> at 5.  On Feburary 15, 2013, Nationstar sent notice to plaintiffs of an interest rate change from 6.625% to 4.625%.  Doc. No. 9-7.  A little over a month later, Nationstar again notified plaintiffs of a rate change – this time from 4.625% back to 6.625%.  Doc. No. 9-6.  Nationstar cited the 6.625% rate floor set forth in Note II as the reason for the increase.  <u>Id.</u>  By letter dated May 15, 2013, plaintiffs disputed the interest rate increase.  Doc. No. 9-7.  Presumably relying on Note I, plaintiffs stated in the letter that they have been overcharged since 2010 (when the regular six-month interval changes to the rate were to begin) and sought a refund. <u>Id.</u>  Since this letter, plaintiffs have not made any payments on the loan.  On June 17, 2013, Nationstar sent a formal notice of default to plaintiffs.  Doc. No. 9-8.  On June 24, 2013, Nationstar sent correspondence to plaintiffs in response to

3

their May 15th letter.  Nationstar declined the refund request
and explained its methodology for calculating the interest rate,
citing the Note II rate floor.  Doc. No. 9-9.

Plaintiffs filed this action against the two loan servicers
– Aurora and Nationstar - on August 1, 2013, alleging violations
of the Truth in Lending Act ("TILA"), breach of contract,
violations of the West Virginia Consumer Credit and Protection
Act ("WVCCPA"), and fraud.  Doc. No. 1.  Plaintiffs filed an
amended complaint to add a claim for usury.  Doc. No. 9.  The
original creditor, TM Capital, and the current owner of
plaintiffs' obligation, Citibank, M.A. as Trustee for Lehman XS
Trust Mortgage Pass-Through Certificates, Series 2005-6
("Citibank"), are not named as defendants in this action.  On
November 5, 2013, defendants filed the instant motion to dismiss
seeking to have all of plaintiffs' claims dismissed for failure
to state a claim and contending this court lacks jurisdiction
based on the local action doctrine.  Doc. Nos. 11 and 12.  On
January 17, 2014, plaintiffs moved for leave to amend their
complaint to add Citibank and to otherwise replead certain
matters to the extent that this court finds merit in defendants'
motion to dismiss.  Doc. Nos. 23 and 24.

## II.  **Local Action Doctrine**

Because defendants' contentions concerning the local action doctrine potentially affect the court's jurisdiction over this matter, the court will address this argument first.  Defendants contend that this court lacks jurisdiction because this action involves a security interest in property located in South Carolina.  Doc. No. 12 at 19-20.  As such, they contend the local action rule requires this court to either dismiss the case or transfer it to the proper South Carolina district court.  Doc. No. 19 at 15.  Plaintiffs respond by contending that the local action rule is one affecting venue rather than jurisdiction, and that the Jurisdiction and Venue Clarification Act repealed the local action rule as it pertains to venue law.  Doc. No. 14 at 18-19.  In the alternative, plaintiffs argue that their claims are transitory in nature rather than local.  Id. at 19.

At its core, the local action doctrine concerns the distinction between local and transitory actions.  Local actions are those directly affecting real property which traditionally must be brought in the district where the real property is located.  Transitory actions are essentially any action which is not a local action; a transitory action may be brought in any court with personal jurisdiction over the defendant.  This

distinction traces its origins to the early common law.  See
Charles A. Wright, et. al, 15 Fed. Prac. & Proc. Juris. § 3822
n.5 (4th ed.).  The leading case importing the doctrine into
American jurisprudence is Livingston v. Jefferson, 15 F. Cas.
660 (C.C.D. Va. 1811) – a decision by Chief Justice Marshall
made while riding circuit as a trial court judge.[2]  The court
held that an action against Thomas Jefferson for trespass on
land in Louisiana could not be brought in a Virginia court
because of the local action doctrine.  Chief Justice Marshall
traced the history of the common law rule and somewhat
reluctantly applied it to dismiss the action.  Discussing the
distinction between local and transitory actions, Chief Justice
Marshall stated "that actions are deemed transitory, where
transactions on which they are founded, might have taken place
anywhere; but are local where their cause is in its nature
necessarily local."  Id. at 664.

    Despite this early decision incorporating the local action
doctrine into American jurisprudence, conflicting authorities
abound as to the nuances of this ancient common law rule.  As
has been stated, "there is a divergence of authority on nearly
every aspect of the doctrine."  Fisher v. Virginia Elec. & Power
Co., 243 F. Supp. 2d 538, 540 (E.D. Va. 2003).  Critical among

_____

[2] Judge John Tyler, Sr. also wrote an opinion in Livingston, but
Chief Justice Marshall's opinion is most often cited.

these splits in authority are whether the doctrine affects jurisdiction or venue and what law to apply when characterizing an action as either transitory or local.

### a. Jurisdiction vs. Venue

Jurisdiction relates to the power of courts to adjudicate. Venue, on the other hand, merely concerns matters of convenience.  As such, venue defects can be waived, whereas problems with subject matter jurisdiction cannot.  Under the Federal Courts Jurisdiction and Venue Clarification Act of 2011, "the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature." 28 U.S.C. § 1391(a)(2).  So, Congress has abolished the local action doctrine to the extent that it is solely an issue of venue.  Unfortunately, this does not settle the issue.  Courts applying the local action doctrine have split over whether the rule affects venue or jurisdiction.  Compare Hayes v. Gulf Oil Corp., 821 F.2d 285, 291 (5th Cir. 1987) and Prawato v. PrimeLending, 720 F. Supp. 2d 1149, 1156-57 (C.D. Cal. 2010)(determining that the local action doctrine affects jurisdiction) with Hallaba v. Worldcom Network Servs. Inc., 196 F.R.D. 640, 648 (N.D. Okla. 2000) and Fisher, 243 F. Supp. 2d 538, 556-59 (determining that the doctrine affects only venue). Because this action is clearly transitory as will be discussed

7

below, this court need not wade into this conflict.  That is, even if the doctrine affects jurisdiction, the matter is properly before this court.

### b. Transitory vs. Local

Assuming that the local action doctrine affects jurisdiction rather than venue, the court must decide whether this action is transitory or local in nature.  The basis for making this determination is another disputed aspect of the local action doctrine.  Some courts, when characterizing an action as local or transitory, apply state law while others have applied federal law.  See Fisher v. Virginia Elec. & Power Co., 243 F. Supp. 2d 538, 540 (E.D. Va. 2003)(applying federal law); Big Robin Farms v. California Spray-Chem. Corp., 161 F. Supp. 646, 647-49 (W.D.S.C.)(applying state law); Wheatley v. Phillips, 228 F. Supp. 439, 441-42 (W.D.N.C. 1964)(applying both federal and state law); Raphael J. Musicus, Inc. v. Safeway Stores, Inc., 743 F.2d 503, 506 (7th Cir. 1984)(declining to address the issue after noting the conflict in the case law).  This conflict arises from Supreme Court dictum in Huntington v. Attrill, 146 U.S. 657, 669-70 (1892) erroneously suggesting that Chief Justice Marshal held that the law of the forum state should be applied.  For the reasons provided in the analytically sound and thoughtful opinion of Judge Payne in Fisher, this

8

court is of the opinion that federal law controls the characterization of an action as either local or transitory. See Fisher, 243 F. Supp. 2d at 542-46; see also Livingston, 15. F. Cas. at 665 (holding that the local action doctrine "depends, exclusively, on the constitution and laws of the United States.").

Fisher is also instructive for ascertaining exactly what that federal law is. As there is no guidance from Congress on this matter, the characterization of an action as transitory or local is a product of decisional law. At the center of the Fisher court's analysis was the original rule derived from Livingston that transitory actions are those where the transactions on which they are founded could have occurred anywhere. Fisher, 243 F. Supp. at 548. The critical inquiry then becomes on what transaction the action is founded. Many "courts have ascertained the transaction on which the action is founded by looking at the 'nature' of the action in light of the primary, or principal, dispute between the parties." Id. at 549 (citing Bigio v. Coca-Cola Co., 239 F.3d 440 (2nd Cir. 2000)). Applying this standard, the Fisher court determined that the action in which North Carolina landowners sought a declaratory judgment against utility companies concerning the meaning of certain grants of easement burdening their lands, and damages

9

for continuing trespass on that land was transitory "because the principal and fundamental question [was] one of contract construction, not trespass." Fisher, 243 F. Supp. at 553.

It is clear that the transaction on which the present action is based is the loan closing in 2005 which resulted in two differing loan agreements.  This transaction could have occurred anywhere.  The principal and fundamental question at the core of plaintiffs' complaint is whether Note I or Note II governs plaintiffs' relationship with their creditor – a quintessentially contractual question.  Everything else is incidental to this fundamental dispute.  Simply because property in another state is involved does not strip this case of its essential contractual nature.  As far back as Livingston, Chief Justice Marshall stated that that "all contracts wherever executed" fell under the transitory category.  15 F. Cas. at 664.  To remove any doubt, he added that "[t]o this general rule, contracts respecting lands form no exception."  Id.  More recently, the Fourth Circuit has expressed a similar view. "[T]he basis for sanctioning an in personam decree affecting extraterritorial real estate is the relationship between the litigants that gives rise to a transitory cause of action.  The most frequent examples are contracts, mortgages, and leases."

10

Humble Oil & Ref. Co. v. Copeland, 398 F.2d 364, 367 (4th Cir. 1968).[3]

The local action doctrine "appropriately comes into play when determinations within the particular expertise of a situs court may become necessary or when uniquely local evidence or activity is dispositive of a dispute over title to real estate." Fisher, 243 F. Supp. at 546.  This rationale is not implicated where, as here, the principle judicial task is determining which of two differing contracts governs.  Such a determination can be made without resort to any particular expertise of the situs court.  Because this is a transitory action, this action is properly before this court even if the local action doctrine affects jurisdiction.  As such, defendants motion to dismiss or transfer based on the local action doctrine is denied.

   III. **Standards**

      **a. Rule 12(b)(6) – Motion to Dismiss Standard**

   Fundamentally, a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests whether a plaintiff's complaint satisfies Rule 8(a)'s liberal pleading requirements.  Rule 8(a) of the Federal Rules of Civil Procedure

---

[3] Even if the court were to look to West Virginia law concerning transitory versus local actions, the result would likely be the same.  See Wetzel County Sav. & Loan Co. v. Stern Bros., Inc., 195 S.E.2d 732, 736 (W. Va. 1973)("Actions for a breach of contract are transitory and consequently not local in nature.").

requires a "short and plain statement of the claim showing that
the pleader is entitled to relief."                    □ Fed. R. Civ.

    Rule 8(a)'s "short and plain statement" requirement
indicates that one of the objectives of Rule 8(a) is to avoid
technicalities.  <u>See</u> <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 251
(4th Cir. 1999).  Moreover, the Supreme Court has reiterated
that, for purposes of Rule 8, pleading "[s]pecific facts [is]
not necessary; the statement need only give the defendant fair
notice of what the . . . claim is and the grounds upon which it
rests."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007)(quoting <u>Bell</u>
<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007))(internal
quotations omitted); <u>see also</u> <u>Ostrzenski</u>, 177 F.3d at 251
(explaining that a claim satisfies Rule 8's requirements if a
plaintiff "colorably states facts which, if proven, would
entitle him to relief.")(quoting <u>Adams v. Bain</u>, 697 F.2d 1213,
1216 (4th Cir. 1982))(internal quotations omitted).

    Nevertheless, while a complaint "need only give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests," <u>Erickson</u>, 551 U.S. at 93, the complaint
must state a <u>plausible</u> claim for relief.  More specifically, a
complaint must "permit the court to infer more than the mere
possibility of misconduct" based upon "its judicial experience
and common sense."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79

(2009); see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009)(adding that a "complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible."). As a general matter, if a complaint could not satisfy the minimal requirements outlined above, it could not survive a 12(b)(6) motion to dismiss. See 5B Fed. Prac. & Proc. Civ. § 1356 (3d ed.)(noting that "[o]nly when the plaintiff's complaint fails to meet [Rule 8's] liberal pleading standard is it subject to dismissal under Rule 12(b)(6).").

Finally, when applying the 12(b)(6) standard, a court must accept the complaint's factual allegations as true. See Twombly, 550 U.S. at 555-56. Moreover, a court considering a 12(b)(6) motion must also "draw[] all reasonable . . . inferences" from the facts alleged in the Complaint in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### b. Rule 15(a) – Leave to Amend Standard

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served . . . [o]therwise a party may amend the party's pleading only by leave of court or

by written consent of the adverse party; and leave shall be freely given when justice so requires."  In <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962), the United States Supreme Court noted that amendment under Rule 15(a) should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

Of particular relevance to this action is the standard for what constitutes futility.  Leave to amend should be denied for reasons of futility "when the proposed amendment is clearly insufficient or frivolous on its face." <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 510 (4th Cir. 1986).  More specifically, "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." <u>Katyle v. Penn Nat. Gaming, Inc.</u>, 637 F.3d 462, 471 (4th Cir. 2011).  That is, an amendment is futile if it does not satisfy the requirements of the Federal Rules of Civil Procedure.  <u>See</u> <u>U.S. ex rel. Wilson v. Kellog Brown & Root, Inc.</u>, 525 F.3d 370 (4th Cir. 2008) (district court did not abuse its discretion in denying leave to file an amended complaint where the proposed amended complaint did not properly state a claim under Rule 12(b)(6)).  In essence, the court

14

is required to determine whether plaintiff's proposed amendment
states a claim upon which relief can be granted.

IV. **Analysis**

    a. **Count I – Truth in Lending Act**

        i. **Motion to Dismiss**

Defendants first move to dismiss plaintiffs' claim under
the Truth in Lending Act ("TILA").  Defendants cite several
reasons why plaintiffs' TILA claims fail as a matter of law.
First, defendants contend that TILA does not apply to loan
servicers; second, defendants argue that plaintiffs' request for
recission and an award of monetary damages are both time-barred;
and third, defendants argue plaintiffs' failure to allege intent
to tender the loan proceeds is fatal to their TILA claim.  Doc.
No. 12 at 6-9.

The disposition of plaintiffs' TILA claims as against the
current defendants is quite simple.  As defendants point out and
plaintiffs concede, TILA does not apply to loan servicers.  As
the statute makes clear and both parties agree,

> TILA expressly provides that a servicer – a
> person responsible for receiving any scheduled
> periodic payments from a borrower pursuant to the
> terms of any loan, 15 U.S.C. § 1641(f)(3); 12
> U.S.C. § 2605(i)(2)-(3)--is not to be treated as
> an assignee "unless the servicer is or was the
> owner of the obligation."

15

Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc., 858 F.
Supp. 2d 561, 567 (E.D.N.C. 2012)(citing 15 U.S.C. §
1641(f)(1).  Both defendants – Aurora and Nationstar – are
servicers of plaintiffs' loan and neither has ever owned the
obligation.  As such, TILA does not apply to defendants.
Defendants' motion to dismiss as to plaintiffs' claims under
TILA is granted.

### ii. Motion for Leave to Amend

Recognizing that defendants status as loan servicers is
fatal to their TILA claims, plaintiffs seek leave to amend their
complaint to allege TILA violations against the current owner of
the obligation – Citibank.  Doc. No. 23.  Defendants argue that
such amendment would be futile because plaintiffs' TILA claims
for recission and damages are barred by the applicable statutes
of limitations.  Doc. No. 28 at 3-4.

First, with respect to plaintiffs' TILA claim for
recission, the court finds that permitting plaintiffs to amend
their complaint to add this claim against Citibank would be
futile.  When a creditor properly discloses the information and
forms required of TILA, the obligor has three business days to
exercise his right to rescind the transaction.  15 U.S.C. §
1635(a).  When the required disclosures are not made, "[a]n
obligor's right of recission shall expire three years after the

date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." Id. at § 1635(f). Plaintiffs, through their attorney-in-fact, closed on this loan on or about August 12, 2005.  Plaintiffs expressly allege that they rescinded the loan transaction on May 15, 2013 by providing notice.  Doc. No. 9 at 7.  Even under the longer three year limitations period, the time for plaintiffs to seek recission had long since passed.  As such, an amendment to the complaint seeking recission of the loan contract against Citibank would be futile.

In an attempt to avoid this inevitable conclusion, plaintiffs contend that "it cannot be said that there was consummation of the transaction or the sale of the property upon the essential terms the defendants enforced against plaintiffs." Doc. No. 29 at 4.  Such a contention finds no support in any authorities and directly contradicts the facts of this case. This whole dispute is over a transaction involving the sale of property.  Indeed, plaintiffs' own allegations in the amended complaint refute the notion that there was not a consummation of the transaction or sale of the property.  See Doc. No. 9 at 2 ("[P]laintiffs purchased real property . . . .").  The transaction was consummated, and plaintiffs have made mortgage

17

payments for the better part of the last eight years.  As such, their right to rescind under TILA has long since passed.

Likewise, plaintiffs' TILA claim for damages is also time-barred and therefore permitting the amendment to add the claim against Citibank is futile.  TILA actions for damages must be brought "within one year from the date of the occurrence of the violation . . . ."  15 U.S.C. § 1640(e).  District courts in this circuit have held that the date of the occurrence of the violation "is the date on which the borrower accepts the creditor's extension of credit."  Wittenberg v. First Indep. Mortgage Co., 2011 WL 1357483, *10 (N.D.W. Va. Apr. 11, 2011) (citing Mosley v. Countrywide Home Loans, Inc., 2010 WL 4484566, *2 (E.D.N.C. Oct. 26, 2010)).  Plaintiffs closed on the loan on August 12, 2005 through their attorney-in-fact and accepted the creditor's extension of credit shortly thereafter.  This suit was not filed until August 1, 2013 – nearly eight years after the closing.  Therefore, plaintiffs' TILA claim for damages is time-barred.  See McLeod v. PB Inv. Corp., 492 F. App'x 379, 387 (4th Cir. 2012) ("'[A] claim for damages under TILA . . . is subject to a one-year limitations period that begins to run from the date the loan closed.'")(citing In re Community Bank of Northern Virginia, 622 F.3d 275, 303 (3d cir. 2010).

Plaintiffs' attempts to escape this result are not availing.  First, plaintiffs contend that the TILA violation was not the alleged non-disclosure of the terms but rather the monthly charges of an interest rate higher than that agreed upon in Note I.  Doc. No. 14 at 8.  This argument misapprehends the nature of what TILA regulates and attempts to remedy.  TILA is concerned with disclosures made at the consummation of a transaction, not with the parties' course of performance of a loan contract.  This is evident from the statutory provisions cited by plaintiffs in their amended complaint which specifically address required disclosures.  Doc. No. 9 at 7; see also 15 U.S.C. 1638(e).  Furthermore, "'[n]ondisclosure is not a continuing violation for purposes of the statute of limitations.'"  Polis v. Am. Liberty Fin., Inc., 237 F. Supp. 2d 681, 684 (S.D.W. Va. 2002) (citing In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984)).

Second, plaintiffs argue that the statute of limitations should be equitably tolled on the basis of fraudulent concealment.  Doc. No. 14 at 8-9.  Equitable tolling of a statute of limitations has been permitted "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. . . . [or] when extraordinary circumstances beyond plaintiffs' control made it

19

impossible to file the claims on time." Chao v. Virginia Dep't
of Transp., 291 F.3d 276, 283 (4th Cir. 2002)(internal citations
and quotations omitted); see also Barns v. West, Inc., 243 F.
Supp. 2d 559, 562-63 (E.D. Va. 2003)(determining the TILA
statute of limitations is subject to equitable tolling).  The
equitable doctrine will not, however, come to the aid of a
claimant that fails "to exercise due diligence in preserving his
legal rights."  Id.

One such ground warranting equitable tolling is fraudulent
concealment, which requires a plaintiff to demonstrate "(1) the
party pleading the statute of limitations fraudulently concealed
facts that are the basis of the plaintiff's claim, and (2) the
plaintiff failed to discover those facts within the statutory
period, despite (3) the exercise of due diligence." Supermarket
of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119,
122 (4th Cir. 1995).  Plaintiffs have not pled and cannot meet
these elements; therefore, they would not be entitled to
equitable tolling under a fraudulent concealment theory.  The
first element of the fraudulent concealment test requires a
showing of "affirmative acts of concealment." Id. at 125.  The
amended complaint is devoid of such specific affirmative acts,
containing only innuendo and circumstance.  And while it is true
that

> affirmative acts of concealment by Defendant need
> not be separate and apart from the acts of
> concealment involved in the TILA violation,
> Plaintiffs' reliance on general allegations that
> Defendant failed to provide them with material
> information required to be disclosed under TILA
> fails to show that Defendant took active steps to
> prevent Plaintiffs from suing on time.

Harris v. Sand Canyon Corp., 274 F.R.D. 556, 561 (D.S.C. 2010).

Additionally, it is highly doubtful plaintiffs could show the exercise of due diligence.  Note II, containing the differing interest rate terms, was sent to plaintiffs by their attorney-in-fact by fax on September 19, 2005 with the subject line "New Original Note."  Doc. No. 9-5 at 1.  Despite plaintiffs' insistence that they thought this was only a "copy" of Note I, such a subject line would cause a reasonable person to inquire further.  A simple scroll through the September 19, 2005 correspondence would have revealed the altered interest rate terms.

Finally, plaintiffs seek refuge from the statute of limitations by invoking the discovery rule.  Generally, the limitations period begins to run upon discovery of the injury.  That is, "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995).  While the lack of the exercise of due diligence discussed above would be

sufficient to reject plaintiffs' contention based on the discovery rule, the court determines that the discovery rule does not even apply to the TILA statute of limitations. The discovery rule is inapplicable when a statute provides for a different start time by "clear and unambiguous" language. Hamilton v. 1st Source Bank, 928 F.2d 86, 87-88 (4th Cir. 1990) (Age Discrimination in Employment Act's language providing that claims must be filed with the EEOC within 180 days from the time "the alleged unlawful practice occurred" clearly and unambiguously foreclosed application of the discovery rule). The express language of the TILA statute of limitations states that the limitations period begins to run "from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1640(e). This language is clear and does not contemplate application of the discovery rule. See Mullinax v. Radian Guar. Inc., 199 F. Supp. 2d 311 (M.D.N.C. 2002) (determining that Congress foreclosed application of the discovery rule to the Real Estate Settlement Procedures Act statute of limitations by using the "from the date of the occurrence of the violation" language). As stated by the Fourth Circuit, "when Congress has intended a discovery rule, it has proven capable of writing one." Hamilton, 928 F.2d at 88. They have not done so with respect to TILA, and the clear and unambiguous language forecloses its application in

this case.  Plaintiffs are not entitled to equitable tolling.
Therefore, permitting the proposed amendment would be futile.

The court recognizes that when determining whether an
amendment would be futile, the court is to address the
sufficiency of plaintiffs' allegations and not the strength of
defendants' defenses.  Richmond, Fredericksburg & Potomac R. Co.
v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).  Nonetheless, when a
complaint states the elements of the defense, it can be
dismissed based on that affirmative defense.  See LaChapelle v.
Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir.
1998)("Granting a motion to dismiss based on a limitations
defense is entirely appropriate when the pleader's allegations
leave no doubt that an asserted claim is time-barred.").
Plaintiffs' amended complaint identifies the dates relevant to
defendants' statute of limitations contentions.  As such, the
court's determination that plaintiffs' proposed TILA claims
against Citibank would be futile is appropriate even at this
procedural posture.

### b. Count II – Breach of Contract

#### i. Motion to Dismiss

Next, defendants move to dismiss plaintiffs' breach of
contract claim on the grounds that they are not parties to the
loan contract and cannot therefore be liable under the contract.

Doc. No. 12 at 10.   Again, plaintiffs essentially concede this
point and seek leave to amend to add the owner of the obligation
with whom they are in privity of contract.   Doc. No. 14 at 10-
11.   As an initial matter, the parties agree that South Carolina
law governs plaintiffs' contract claim.   Doc. No. 12 at 9-10;
Doc. No. 14 at 10.   Applying West Virginia choice of law rules
as this court must do, see Klaxon Co. v. Stentor Elec. Mfg. co.,
313 U.S. 487 (1941), the court agrees with this conclusion.   See
Joy v. Chessie Employers Fed. Credit Union, 411 S.E.2d 261 (W.
Va. 1991)(determining that Maryland law applied to a loan
agreement entered into in Maryland, with a credit union in
Maryland, and with payments to be made in Maryland).

Again, the disposition of the breach of contract claim as
to the current defendants is simple.   "Generally, one not in
privity of contract with another cannot maintain an action
against him in breach of contract . . . ."   Clardy v. Bodolosky,
679 S.E.2d 527, 544 (S.C. Ct. App. 2009)(citations and internal
quotations omitted); see also Stewart v. State Farm Fire & Cas.
Co., 2012 WL 253136, *2 (D.S.C. Jan. 26, 2012)("There is no
evidence here that [defendant] was a party to the contract . . .
. For these reasons, [plaintiff] cannot possibly maintain an
action against [defendant] for breach of contract or breach of
the duty of good faith and fair dealing.").   Aurora and

Nationstar are not parties to the loan contract, but merely agents of the obligation owner.  As such, plaintiffs have no cause of action against defendants for breach of contract. Defendants' motion to dismiss as to the breach of contract claim is granted.

### ii. Motion for Leave to Amend

Again, plaintiffs seek leave to amend to add a breach of contract claim against Citibank.  Here, however, they are on more solid ground.  The crux of this entire dispute concerns whether Note I or Note II governs the relationship between plaintiffs and the obligation owner, currently Citibank. Plaintiffs allege Note I governs and that the contract was breached because they were charged interest rates inconsistent with Note I – a contention Citibank will likely dispute.  This is a classic contracts dispute.  See Doc. No. 29 at 5 ("[Note II] is of no effect because there exists no acceptance, consideration, or a meeting of the minds on the differing interest term.").  Citibank, as the current obligation owner, is in privity of contract with plaintiffs.  As such, plaintiffs' cause of action for breach of contract is properly brought against Citibank.  Therefore, plaintiffs are granted leave to

amend their complaint to add a breach of contract action against Citibank.[4]

### c. Count III – Unconscionable Contract and West Virginia Consumer Credit and Protection Act

#### i. Motion to Dismiss

Count III of plaintiffs' amended complaint alleges various violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"). Doc. No. 9 at 10-11. Defendants move to dismiss plaintiffs' WVCCPA claims, contending that the WVCCPA does not apply because South Carolina law governs the loan agreement. In support of this contention, defendants cite Joy v. Chessie Employees Fed. Credit Union, 411 S.E.2d 261 (W. Va. 1991). There, the West Virginia Supreme Court of Appeals held that the trial court "was correct in determining that the [WVCCPA] does

---

[4] Defendants also moved to dismiss this action for the failure to join indispensable parties. Doc. No. 12 at 17-19. To be sure, Citibank is likely a necessary party. However, there is no suggestion in any of the parties' filings that this necessary party is unavailable. See Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917-18 (4th Cir. 1999)(dismissal under Federal Rule of Civil Procedure is warranted only when a necessary party is unavailable and the proceeding cannot continue in that party's absence). Defendants also state that because TM Capital (the original creditor) has been dissolved and Eugene J. Laurich (the attorney who signed the loan documents on plaintiffs' behalf) is now deceased the action must be dismissed for failure to join indispensable parties. The attorney-in-fact was acting on plaintiffs' behalf. Furthermore, Citibank is the current creditor, and they are bound by the loan contract. As such, plaintiffs are permitted to add Citibank, and defendants' contentions concerning indispensable parties are without merit.

not apply in this case because choice of law principles dictate that the law of Maryland control [sic] the loan agreement." Id. at 265.  As discussed above, South Carolina law governs the loan contract in this case.  The WVCCPA is therefore inapplicable, and plaintiffs' claims under the Act are dismissed.

### ii. Motion for Leave to Amend

Plaintiffs seek leave to amend to add "parallel claims" under the South Carolina Consumer Protection Code ("SCCPC"). Doc. No. 14 at 13; Doc. No 23.  It is unclear exactly what these parallel claims would be given that the only provision cited by plaintiffs in support of their motion for leave to amend is South Carolina Code Section 37-5-108 concerning unconscionability.  Defendants contend the amendment would be futile because plaintiffs SCCPC claim is time-barred and the allegations are insufficient to state a claim under the SCCPC. Doc. No. 28 at 6-7.

The court need not address defendants' statute of limitations argument because it is clear that plaintiffs' allegations do not state a claim for unconscionabilty under § 37-5-108.  Therefore, such amendment would be futile.  In South Carolina, "[u]nconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so

27

oppressive that no reasonable person would make them and no fair and honest person would accept them." Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc., 472 S.E.2d 242, 245 (S.C. 1996). The amended complaint is devoid of facts alleging plaintiffs lacked a meaningful choice or that Note II is oppressive. The factors enumerated in the statute which tend to show unconscionability are wholly absent from plaintiffs' pleadings. See S.C. Code § 37-5-108(4)-(5). Plaintiffs are sophisticated consumers that retained legal counsel to serve as their attorney-in-fact. And while plaintiffs contend Note II does not govern their relationship with their creditor, there is nothing in the terms of Note II that render it "so oppressive that no reasonable person would make them and no fair and honest person would accept them." In fact, it is almost identical to Note I with the exception of the higher interest rate floor. Simply because plaintiffs believe that Note II does not govern does not automatically make the contract unconscionable. Plaintiffs would have this court turn every breach of contract into a claim of statutory unconscionability. The court declines to do so. Cf. Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574 (D.S.C. 2003)("South Carolina law is clear: even an intentional breach of contract, absent an adverse public impact, will not support a cause of action under the [South Carolina Unfair Trade Practices

28

Act].").  As such, plaintiffs are denied leave to add claims
under the SCCPC.

### d. Count IV – Fraud

#### i. Motion to Dismiss

In Count IV of the amended complaint, plaintiffs allege
that "defendants' attempt to enforce terms and conditions that
were not originally agreed upon in [Note I] were undertaken
intentionally in an endeavor to misrepresent material terms and
conditions of [Note I] and a further attempt to mislead the
plaintiffs so as to induce the plaintiffs to surrender their
legal rights and/or property."  Doc. No. 9 at 12.  Defendants
contend that plaintiffs' fraud claim fails as a matter of law
for multiple reasons.  First, defendants argue that the fraud
claim is barred by the two-year statute of limitations.  Doc.
No. 12 at 13-14.  Second, they argue that plaintiffs have not
and cannot plead justifiable reliance.  Id. at 14-15.  Third,
defendants contend that plaintiffs have failed to plead fraud
with the requisite particularity.  Fourth, defendants contend
that the fraud claim is barred by the economic loss rule.  Doc.
No. 19 at 12.

In West Virginia the essential elements in an action for
fraud are as follows: (1) the act claimed to be fraudulent was
the act of the defendant or induced by him; (2) it was material

and false; (3) plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) plaintiff was damaged because he relied upon it.  Cordial v. Ernst & Young, 483 S.E.2d 248, 259 (W. Va. 1996).  Both the Supreme Court of Appeals of West Virginia and the Fourth Circuit have characterized the burden of proving fraud as "unquestionably heavy."  Elk Ref. Co. v. Daniel, 199 F.2d 479, 482 (4th Cir. 1952); Steele v. Steele, 295 F. Supp. 1266, 1269 (S.D.W. Va. 1969)(explaining that a presumption always exists in favor of innocence and honesty in a given transaction and the burden is upon one who alleges fraud to prove it by clear and distinct evidence); Tri-State Asphalt Prod., Inc. v. McDonough Co., 391 S.E.2d 907, 912 (W. Va. 1990)(quoting Calhoun County Bank v. Ellison, 54 S.E.2d 182, 193 (W. Va. 1949)("[A]llegations of fraud, when denied by proper pleading, must be established by clear and convincing proof.")).

The Federal Rules of Civil Procedure also express a degree of skepticism towards claims of fraud.  Under Rule 9(b), "special matters" such as fraud must be "stated with particularity."  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained

thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1297 at 590 (2d ed. 1990)).  Moreover, where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.  DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).  Complaints that fail to meet these heightened pleading requirements are subject to dismissal.  Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990).

Plaintiffs' claim for fraud and their pleading thereof suffer from multiple inadequacies.  First, it is unclear from the amended complaint exactly what actions plaintiffs are claiming constitute fraud.  It could either be one of two things.  One, it could be the initial signing of Note I.  That is, plaintiffs could be alleging that TM Capital (the original holder of the note) fraudulently entered into Note I with the intention of changing the terms surreptitiously and without plaintiffs knowledge.  This theory suffers from the obvious problem that TM Capital is not a party to this suit, and neither of the defendants participated in the loan closing.  The theory also fails because plaintiffs received a copy of Note II, delivered from their attorney-in-fact, and signed by him.  Such

31

facts completely undermine any notion that TM Capital intended
to keep the new terms secret.

Or two, the alleged fraud could be based on the enforcement
of the terms of Note II by defendants rather than the terms of
Note I beginning in September 2010.  Plaintiffs appear to argue
this theory in their response in opposition to the motion to
dismiss.  They argue they have met the stricter pleading
requirements by contending that they have alleged that
"[d]efendants Aurora . . . and Nationstar . . . (who), charged
and/or attempted to charge plaintiffs interest in excess of the
agreed term (what) during the course of loan servicing (how and
when)."  Doc. No. 14 at 16.  Again, this theory is flawed.
While these allegations may be sufficient to state a claim for
breach of contract (if Aurora and Nationstar were parties to the
contract), they do not allege a claim for fraud.  As the Fourth
Circuit has stated,

> We must be careful to distinguish between actual
> fraud and artfully pleaded breach of contract
> claims, however.   "[F]raud cannot be predicated
> on statements which are promissory in their
> nature, or constitute expressions of intention,
> and an actionable representation cannot consist
> of mere broken promises, unfulfilled predictions
> or expectations, or erroneous conjectures as to
> future events . . . ."

White v. Nat'l Steel Corp., 938 F.2d 474, 490 (4th Cir.
1991)(quoting Janssen v. Carolina Lumber Co., 73 S.E.2d 12, 17

(W. Va. 1952)).  Plaintiffs' attempt to pile a fraud action onto their breach of contract action is not availing.  The essence of the fraud allegations are that defendants enforced terms that were never agreed to by the parties – a classic breach of contract theory.

The confusion concerning what exactly constituted fraud in this matter is a product of imprecise pleading.  Plaintiffs' generalized and conclusory allegations fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  The amended complaint fails to properly allege the time, place, and content of the alleged fraudulent misrepresentations. Furthermore, plaintiffs generally allege fraud against "defendants" without specifying which defendant partook in the fraud.  Such a practice has repeatedly been determined to not meet the heightened pleading requirements.  See, eg, Junnti v. Prudential-Bache Sec., Inc., 993 F.2d 228 (4th Cir. 1993)(unpublished disposition)("Further indicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act.").  The pleading fails to establish the who, what, or when of the fraud allegations.  There are simply no allegations tending to show falsity or wrongdoing on the part of Aurora, Nationstar, or even

33

TM Capital or Citibank.  Absent specific factual allegations
tending to show fraud on the part of specific defendants,
plaintiffs cannot state a claim for fraud.  As such, defendants'
motion to dismiss plaintiffs' fraud claim is granted.

### ii. Motion for Leave to Amend

Plaintiffs briefly mention their fraud claim in their
motion for leave to amend their complaint, stating they "seek to
amend as it relates to . . . pleading under plaintiffs' claim of
common law fraud."  Doc. No. 24 at 1.  Plaintiffs have provided
no specific information or details as to how they would amend
the complaint.  In fact, plaintiffs' doubled down on their
support for the initial fraud pleading.  To be sure, plaintiffs
moved for leave to amend prior to a ruling by this court on
their motion to dismiss.  Nonetheless, the lack of any
additional details indicating that the pleading defects can be
cured suggests that permitting leave to amend would be futile.
As such, to the extent plaintiffs seek leave to amend their
fraud claim, the request is denied.

### e. Count V – Usury

### i. Motion to Dismiss

Defendants move to dismiss plaintiffs' usury claim on
several grounds.  Defendants contend that plaintiffs fail to
allege that they were charged an interest rate greater than the

maximum rate; that the West Virginia usury statute does not apply to defendants because they are not original lenders or creditors; and that the doctrine of laches bars the usury claim. Doc. No. 12 at 16-17.  Plaintiffs summarily deny these contentions and seek leave to amend to add the obligation owner to the extent that this court agrees that the usury statute does not apply to defendants.  Doc. No. 14 at 17.

Plaintiffs usury claim fails for two reasons.  First, by its terms, West Virginia's usury statute and particularly its quadruple damages provision apply only to "the original lender or creditor or other holder not in due course."  W. Va. Code § 47-6-6; see also Cunningham v. LeGrand, 2013 WL 2484344, n. 3 (S.D.W. Va. June 10, 2013)(Copenhaver, J.)(noting that the quadruple damage provision was inapplicable where the original lender was not a party to the action).  As noted above, Aurora and Nationstar are not lenders, creditors, or holders of the note, and therefore the relief plaintiffs seek for the alleged violation of West Virginia's usury statute cannot be had against these defendants.

Second, plaintiffs fail to make any allegation that they were charged an interest rate in excess of that permitted by West Virginia law.  West Virginia Code § 47-6-6 provides that "[a]ll contracts and assurances made directly or indirectly for

35

the loan or forbearance of money or other thing at a greater
rate of interest than is permitted by law shall be void as to
all interest provided for in any such contract or assurance . .
. ."  The West Virginia Lending and Credit Rate Board, as
authorized by West Virginia Code § 47A-1-1, has set a maximum
finance charge of eighteen percent.  See W. Va. Exec. Ord. at 2
(Oct. 5, 1999), available at
http://www.dfi.wv.gov/about/Documents/WV%20Lending%20and%20Credi
t%20Rate%20Board%20Order.pdf; see also Cunningham, 2013 WL
2484344, *3-4 (discussing the pertinent statutes and arriving at
the eighteen percent maximum rate).  The highest rate that
plaintiffs allege was charged in this matter is 6.625 percent,
and both Notes I and II provided for an interest rate ceiling of
12.625 percent – both well short of the maximum charge permitted
under West Virginia law.  Plaintiffs contend that "[d]efendants
charged an interest rate that exceeded the maximum amount
permitted under [Note I] and hence an amount 'greater than the
rate of interest permitted by law.'"  Doc. No. 14 at 17.  This
argument misapprehends the nature of a usury action,
specifically as to what it means for an interest rate to be
"permitted by law."  Plaintiffs' theory that any rate charged
different than that agreed upon constitutes usury would turn
every breach of a loan contract into a usury claim.  This broad

understanding of usury finds no support in any authorities and consequently fails as a matter of law.  Therefore, defendants' motion to dismiss as to plaintiffs' usury claim is granted.

## ii. Motion for Leave to Amend

The lack of any allegation that plaintiffs were charged a rate higher than eighteen percent is also dispositive of plaintiffs' motion for leave to amend with respect to their usury action.  Adding a usury claim against Citibank would be a futile exercise because there is no allegation that an interest rate greater than the rate of interest permitted by West Virginia law was ever charged.  As such, to the extent that plaintiffs seek leave to amend to add a usury claim against the obligation owner, their request is denied.

## V.  <u>Conclusion</u>

For the reasons expressed above, defendants' motion to dismiss (Doc. No. 11) is GRANTED, and plaintiffs' motion for leave to amend (Doc. No. 23) is GRANTED in PART and DENIED in PART.  As to the current defendants – Nationstar and Aurora – this action is dismissed in its entirety.  Plaintiffs are granted leave to amend their complaint to add a breach of contract action against the current owner of their obligation, Citibank.  Plaintiffs are ordered to file their second amended complaint on or before August 14, 2014.

Furthermore, defendants' motion to exceed page limit for their reply in support of their motion to dismiss (Doc. No. 16) is GRANTED.  Defendants' motion to stay discovery pending resolution of defendants' motion to dismiss (Doc. No. 32), plaintiffs' motion to compel discovery from defendant Aurora (Doc. No. 38), plaintiffs' motion to compel discovery from defendant Nationstar (Doc. No. 40), defendants' request for a hearing (Doc. No. 42), and plaintiffs' motion for modification of the court's scheduling order (Doc. No. 45) are all DENIED as MOOT.  A new scheduling order will be entered when the proper defendant has been added to this case.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 1st day of August, 2014.

Enter:

David A. Faber
Senior United States District Judge