**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**JAMES J. ROWE and SHARON H. ROWE,**

        *Plaintiffs,*

     **v.**                               **Civil Action No. 5:13-cv-21369**

**CITIBANK N.A. AS THE TRUSTEE
FOR LEHMAN XS TRUST MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2005-6,**

        *Defendant.*

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Citibank, N.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6 ("Citibank"), by counsel, submits the following Memorandum in Support of its Motion for Judgment on the Pleadings.

## INTRODUCTION

Plaintiffs are highly educated, sophisticated consumers who bought a vacation property in Hilton Head Island, South Carolina in August 2005.  To close on the loan and execute the loan documents, Plaintiffs appointed a South Carolina law firm to serve as Plaintiffs' attorney-in-fact. Plaintiffs' attorney-in-fact signed two versions of a certain Adjustable Rate Promissory Note ("Note") on Plaintiffs' behalf.  Plaintiffs contend that they are bound by the first version of the Note, which would have allowed their interest rate to fall below the initial rate of 6.625%. However, the pleadings, including the documents attached to and incorporated by reference into the Second Amended Complaint, affirmatively demonstrate that the first version of the Note ("Note I") was the result of a clerical error, which was corrected by the parties in the second version of the Note ("Note II").

Plaintiffs' Second Amended Complaint fails to state a claim for the following reasons: (1) Note I contains a mutual mistake and Note II evidences the parties' agreement; (2) Plaintiffs are not entitled to declaratory relief or attorney's fees, as a matter of law; and (3) Plaintiffs fail to sufficiently plead "consequential" damages and fail to allege any facts supporting such relief. Accordingly, Citibank requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety.

## FACTUAL ALLEGATIONS

1.      Plaintiffs, residents of West Virginia, are highly sophisticated consumers. Plaintiff James J. Rowe is a judge in the Circuit Court for Greenbrier County, West Virginia.[1] Plaintiff Sharon H. Rowe is an accomplished businesswoman who has served on the Boards of Directors of several banks, including Greenbrier Valley National Bank, Horizon Bancorp, Inc., and City National Bank.[2]

2.      On or about August 12, 2005, Plaintiffs purchased a second home in Hilton Head Island, South Carolina (the "Property").  Second Am. Compl. ¶ 7, ECF No. 49.[3]  To help finance the purchase, Plaintiffs obtained a loan from TM Capital, Inc. ("TM Capital") for $626,250 of the $835,000 purchase price with an adjustable interest rate and interest-only payments.  *Id.* ¶¶ 8-9.

3.      Plaintiffs retained the law firm of Laurich, Deeb & Wiseman, P.A., located in Hilton Head, South Carolina ("Laurich, Deeb & Wiseman"), to handle the closing of the Loan contracts, appointing Laurich, Deeb & Wiseman as Plaintiffs' attorney-in-fact.  *Id.* ¶ 13.

---

[1]      *See* Greenbrier County Court Information, http://www.courtswv.gov/lower-courts/counties/greenbrier.html (last visited Dec. 1, 2014).

[2]      *See* Sharon Rowe – Forbes, http://www.forbes.com/profile/sharon-rowe/ (last visited Dec. 1, 2014).

[3]      *See* 15 Governors Rd, Hilton Head Island, SC 29928 - Zillow, http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/_homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ (last visited Dec. 1, 2014).

4.      On August 12, 2005, Laurich, Deeb & Wiseman, in its capacity as attorney-in-fact for Plaintiffs, executed the Loan documents on Plaintiffs' behalf.  *Id.* The many documents executed by Plaintiffs' attorney-in-fact include, but are not limited to, the following:[4]

    a.   "Adjustable Rate Note (LIBOR Six-Month Index)" ("Note I"), providing for an initial interest rate of 6.625% until September 1, 2010, when the interest rate would then be calculated every six months by adding 2.25% to the then-current LIBOR index.[5]  *Id.* ¶¶ 10-11; Am. Compl. Exh. A, ECF No. 9-4.  Note I also provided that the interest rate would not exceed 12.625% (the "ceiling") or fall below 2.25% (the "floor").  Second Am. Compl. ¶ 12, ECF No. 49; Am. Compl. Exh. A, ECF No. 9-4.[6]

    b.   "Six-Month LIBOR Adjustable-Rate Loan Program Disclosure – Fixed for First Five Years – Interest-Only," "describ[ing] the features of the Adjustable-Rate Mortgage (ARM) program [Plaintiffs were] considering."  The Loan Program Disclosure, attached hereto as **Exhibit A**, explained that the "interest rate is fixed

---

[4] The loan documents signed by Plaintiffs' attorney-in-fact are authentic, integral, and incorporated by reference into Plaintiffs' Second Amended Complaint.  *See* Second Am Compl. ¶ 13, ECF No. 49 ("On August 19, 2005, the real estate documents, including the Adjustable Rate Note were mailed by the plaintiffs' attorney-in-fact to the plaintiffs' address"); *id.* ¶ 16 ("There are no documents indicating that the plaintiffs signed any addendum reflecting their consent to the new original note terms."); *id.* ¶ 25 ("A contract existed between plaintiffs and defendant Citibank regarding the sale of [the] residence."); *id.* ¶ 27 ("Defendant failed to comply with interest terms agreed upon by the parties."); *id.* ¶ 29 ("The interest terms the defendant breached were material to the terms and conditions of the Adjustable Rate Note.").

[5] LIBOR stands for the London InterBank Offered Rate, and "is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ('LIBOR'), as published in the Wall Street Journal."  Am. Compl. Exhs. A, E at ¶ 4(B), ECF No. 9-1.  In September of 2010, the six-month LIBOR rate was 0.4778%.  *See* LIBOR Rates History: Historical LIBOR Rate Information, *available at* http://www.fedprimerate.com/libor/libor_rates_history.htm.

[6] The addenda to Note I also reflected the initial interest rate, the step, the ceiling, and the floor recited in Note I.  *See* Am. Compl. Exh. A at 5, 7, ECF No. 9-1.

for the first sixty (60) regularly scheduled payments," but "can change for the 61st regularly scheduled payment and every six (6) months thereafter to the index rate plus the margin, subject to [certain] limits."  Def.'s Exh. A at 1.  One such limit was that the "interest rate cannot decrease to be less than the initial interest rate over the term of the loan."  *Id.*

    c.    "Errors and Omissions/Compliance Agreement," providing that, "if requested by Lender or Closing Agent for Lender," Plaintiffs would "fully cooperate and adjust for clerical errors, any or all loan closing documentation."  A copy of the Errors and Omissions/Compliance Agreement is attached hereto as **Exhibit B**.

5.    On August 19, 2005, Laurich, Deeb & Wiseman mailed copies of all the signed loan documents, including Note I, to Plaintiffs.  Second Am. Compl. ¶ 13, ECF No. 49; Am. Compl. Exh. D, ECF No. 9-4.  The cover letter from Laurich, Deeb & Wiseman advised Plaintiffs that the matter was "closed."  *Id.*

6.    On September 19, 2005, before Plaintiffs' first payment was due to be paid on October 1, 2005, Laurich, Deeb & Wiseman sent a facsimile to Plaintiffs entitled "New Original Note."  Second Am. Compl. ¶ 16, ECF No. 49; Am. Compl. Exh. E, ECF No. 9-5.  The facsimile included a copy of a new Adjustable Rate Note ("Note II"), which bore the August 12, 2005 closing date and the signature of Plaintiffs' attorney-in-fact.  *Id.*  The cover letter sent by Plaintiffs' attorney-in-fact, on Laurich, Deeb & Wiseman's law firm letterhead, instructed, "If you have any questions do not hesitate to call."  *Id.*

8.    Note II provided for an initial interest rate of 6.625% until September 1, 2010, when the interest rate would then be calculated every six months by adding 2.75% to the then-current LIBOR index.  Second Am. Compl. ¶ 15, ECF No. 49; Am. Compl. Exh. E ¶ 4(C), ECF

4

No. 9-5.  The interest ceiling set forth in Note II was 12.625%, just as in Note I, but the interest floor in Note II was 6.625%, as opposed to 2.25% in Note I.  Second Am. Compl. ¶ 15, ECF No. 49; Am. Compl. Exh. E at ¶ 4(D), ECF No. 9-5.

7.     Laurich, Deeb & Wiseman also executed Addenda consistent with the terms of Note II.  A copy of the Addendum to Note and Interest-Only Addendum to Adjustable Rate Promissory Note are attached hereto as **Exhibits C** and **D**, respectively.

8.     The interest rate provisions of Note II are listed in clear and unambiguous terms on page two of Note II and on page one of each Addendum.  Am. Compl. Exh. E, ECF No. 9-5; Def.'s Exhs. C-D.

9.     Note II is secured by a mortgage (the "Mortgage"), which is dated August 12, 2005 and signed by Laurich, Deeb & Wiseman on Plaintiffs' behalf.  A copy of the Mortgage securing Note II on the Property is attached hereto as **Exhibit E**.

10.    For the first seven years, Plaintiffs' Loan was serviced by Aurora Commercial Corporation ("Aurora").  Second Am. Compl. ¶¶ 18-19, ECF No. 49.  During that time, the value of Plaintiffs' Property decreased substantially and, although Plaintiffs listed it for sale several times, they were unable to sell the Property.[7]

11.    In July of 2012, servicing of the Loan transferred from Aurora to Nationstar Mortgage, LLC ("Nationstar").  Second Am. Compl. ¶ 19, ECF No. 49.  Nationstar informed Plaintiffs by letter that the "transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments."  Am. Compl. Exh. C, ECF No. 9-3.

---

[7] *See* Price History for the Property, *available at*: http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ (last visited Dec. 1, 2014).  The Property's current estimated market value is approximately $658,000.  *Id.*

12.     On February 15, 2013, Nationstar notified Plaintiffs that their interest rate would change from 6.625% to 4.625%.   Am. Compl. Exh. G, ECF No. 9-7.

13.     On March 25, 2013, Nationstar notified Plaintiffs that an "audit was conducted on [Plaintiffs'] Adjustable Rate Mortgage."   Am. Compl. Exh. F, ECF No. 9-6.   Nationstar explained that, after adding the "index value of .468% as of 02/01/13 to the agreed upon margin 2.750% for a total of 3.250%," and then applying the interest floor and ceiling terms of 6.625% and 12.625%, respectively, Plaintiffs' interest rate would "increase by 2.000% from 4.625% to 6.625%." *Id.*

14.     On May 15, 2013, Plaintiffs, for the first time, disputed their interest rate, claiming that Nationstar had "been overcharging on the interest rates since 2010 when the rate should have reduced according to the terms of the note."  Am. Compl. Exh. G, ECF No. 9-7; *see* Second Am. Compl. ¶ 21, ECF No. 49.  Plaintiffs requested "a refund or credit on [the] interest overpayments."  Am. Compl. Exh. G, ECF No. 9-7.

15.     On June 24, 2013, Nationstar responded to Plaintiffs' correspondence "regarding concerns with the interest rate."  Am. Compl. Exh. I, ECF No. 9-9.  Nationstar "apologize[d] for sending a letter in February of 2013 discussing a 2.000% drop in the interest rate," but explained that, upon a closer review of "the terms of [Plaintiffs'] interest rate and how it is to be calculated," Plaintiffs' "interest rate is not to drop below 6.625%." *Id.*  Accordingly, Nationstar declined Plaintiffs' request for a refund or credit. *Id.*

16.     Plaintiffs defaulted on their obligations under the loan agreement, and Nationstar formally notified Plaintiffs of their default on June 17, 2013.  Second Am. Compl. ¶ 22, ECF No. 49; Am. Compl. Exh. H, ECF No. 9-8.  Nationstar notified Plaintiffs that the owner of the Loan

is Citibank, N.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6. *Id.*

17.     Plaintiffs filed a lawsuit against Aurora and Nationstar on August 1, 2013.  ECF No. 1.  On September 20, 2013, Plaintiffs filed an Amended Complaint, adding a claim for usury.  ECF No. 9.  On August 14, 2014, the Court dismissed all of Plaintiffs' claims against Aurora and Nationstar, but granted Plaintiffs "leave to amend their complaint to add a breach of contract action against Citibank."  Aug. 1, 2014 Mem. Op. & Order at 25-26, ECF No. 46.

18.     Plaintiffs filed a Second Amended Complaint, alleging a single claim of breach of contract against Citibank.  ECF No. 49.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) authorizes any party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  The Court "may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'"  *Bremus v. AMR Corp.*, No. 2:12cv100, 2014 U.S. Dist. LEXIS 155521, at *9 (E.D. Va. Nov. 3, 2014) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014)); *see also Henson v. Monongahela Power Co.*, No. 2:09-0219, 2010 U.S. Dist. LEXIS 106238, at *5 (S.D. W. Va. Sept. 29, 2010) ("In deciding a motion for judgment on the pleadings, the court 'may consider documents incorporated by reference in the pleadings.'" (quoting *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

A motion for judgment on the pleadings "is assessed under the same standard that applies to a Rule 12(b)(6) motion."  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citing *Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).   Under that standard, judgment on the

pleadings is appropriate when, "'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (quoting *Edwards v. Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). On the other hand, in order to avoid dismissal, the complaint must contain factual allegations that are "'enough to raise a right to relief above the speculative level.'" *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, although this Court must accept all facts alleged in a complaint as true for purposes of deciding the motion, it need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Indeed, even where a complaint contains "well-pleaded factual allegations," the court must nonetheless "determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. If the complaint fails to "allege enough facts to state a claim for relief that is plausible on its face," the complaint "must be dismissed." *Giarratano*, 521 F.3d at 302.

## **ARGUMENT**

As the Court observed in its August 1, 2014 Memorandum Opinion and Order, "[t]he crux of this entire dispute concerns whether Note I or Note II governs the relationship between

plaintiffs and the obligation owner, currently Citibank."  August 1, 2014 Mem. Op. & Order at

25, ECF No. 46.  "Plaintiffs allege Note I governs and that the contract was breached because

they were charged interest rates inconsistent with Note I – a contention Citibank will likely

dispute."  *Id.*  Indeed, Plaintiffs allege that they agreed only to the terms of Note I and that

Citibank breached Note I by imposing upon Plaintiffs the terms of Note II.  *See, e.g.*, Second

Am. Compl. ¶ 27, ECF No. 49.  However, Plaintiffs' Second Amended Complaint, including the

authentic, integral documents attached or incorporated by reference into the Complaint, clearly

reveals "that the plaintiff[s] cannot prove any set of facts in support of [their] claim entitling

[them] to relief."  *Priority Auto Grp.,* 757 F.3d at 139.

## I.      Plaintiffs' Breach of Contract Claim Fails to State a Claim as a Matter of Law.

Plaintiffs' breach-of-contract claim fails, as a matter of law, because Plaintiffs fail to

allege sufficient facts in the Second Amended Complaint demonstrating that their loan is

governed by Note I rather than Note II.  In South Carolina, "'[t]he formation of a binding

contract may be affected by a mistake.  Thus, a contract may be avoided on the ground of mutual

mistake of fact where the mistake is common to both parties and by reason of it each has done

what neither intended.'"  *L-J, Inc. v. S.C. State Highway Dep't*, 242 S.E.2d 656, 663 (S.C. 1978)

(quoting 17 Am. Jur. 2d Contracts § 143 (1964)).  Put another way, parties will not be bound to

terms in an agreement that clearly reflect "a mutual mistake, that both parties intended a certain

thing, and that by mistake in the drafting of the paper did not get what both parties intended."

*Sullivan v. Moore*, 75 S.E. 497, 497 (S.C. 1912); *see also Comm. Union Assur. Co. v. Castile,*

320 S.E.2d 488, 490 (S.C. Ct. App. 1984) ("A mutual mistake is one whereby both parties intended a certain thing and by mistake in the drafting did not get what both parties intended.").[8]

"In construing a contract, it is axiomatic that the main concern of the court is to ascertain and give effect to the intention of the parties."  *D.A. Davis Constr. Co. v. Palmetto Props., Inc.*, 315 S.E.2d 370, 372 (S.C. 1984).  "The parties' intention must be gathered from the contents of the *entire* agreement and not from any particular clause thereof."  *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 502 (S.C. Ct. App. 2007) (emphasis added) (citing *Thomas-McCain, Inc. v. Siter*, 232 S.E.2d 728, 729 (S.C. 1977); *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 538 S.E.2d 672, 675 (S.C. Ct. App. 2000)).  To be sure, "'where there has been no meeting of the minds on the essentials of the treaty, no contract results.'"  *Alderman v. Bivin*, 106 S.E.2d 385, 389-90 (S.C. 1958) (quoting *Cheek v. S. R. Co.*, 198 S.E. 626, 628 (N.C. 1938)).

### A.    Note I includes terms that were not agreed to by the parties.

Plaintiffs freely acknowledge that they engaged Laurich, Deeb & Wiseman to execute the Loan documents on their behalf at the August 12, 2005 closing.  Second Am. Compl.  ¶ 13, ECF No. 49.  Plaintiffs also acknowledge that, shortly after the closing, Laurich, Deeb & Wiseman mailed to Plaintiffs "the real estate documents" they had signed on Plaintiffs' behalf, including Note I.  *Id.*   However, Plaintiffs fail to acknowledge the documents executed at the

---

[8] "Applying West Virginia choice of law rules," this Court ruled "that South Carolina law governs plaintiffs' contract claim."  August 1, 2014 Mem. Op. & Order at 24, ECF No. 46 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), *Joy v. Chessie Employees Federal Credit Union*, 411 S.E.2d 261, 265 (W. Va. 1991)).

August 12, 2005 closing by Plaintiffs' attorney-in-fact on their behalf, which reveal the mutual mistake in Note I from which Plaintiffs seek to unjustly benefit.[9]

One such document, a pre-printed loan program disclosure, "describe[d] the features of [Plaintiffs'] Adjustable-Rate Mortgage," explaining how Plaintiffs' interest rate would be calculated. Def.'s Exh. A at 1. The disclosure explained that the "interest rate is fixed for the first sixty (60) regularly scheduled payments," but that the "interest rate can change for the 61st regularly scheduled payment and every six (6) months thereafter to the index rate plus the margin, subject to [several] limits." *Id.* The disclosure went on to describe the interest rate floor and ceiling, providing that the "interest rate cannot increase more than six percentage points (6.000%) over the initial interest rate over the term of the loan," and that the "**interest rate cannot decrease to be less than the initial interest rate over the term of the loan**." *Id.* (emphasis added). Thus, assuming an initial interest rate of 6.625%,[10] the limits in the disclosure allow for a ceiling of 12.625% and a floor of 6.625%. Because the 2.25% interest floor, typed into Note I, directly conflicts with the limits described in the pre-printed disclosure, executed by Plaintiffs' attorney-in-fact on Plaintiff's behalf, it is apparent that the 2.25% floor was erroneously typed into Note I.

Furthermore, contrary to Plaintiffs' conclusory assertion that "[t]here are no documents indicating that the plaintiffs signed any addendum reflecting their consent to the" terms of Note II, Second Am. Compl. ¶ 16, ECF No. 49, the Errors and Omissions/Compliance Agreement, executed by Plaintiffs' attorney-in-fact on their behalf, is indisputable evidence of Plaintiffs'

---

[9] "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991).

[10] Nowhere in Plaintiffs' Second Amended Complaint do Plaintiffs allege that the parties did not agree to an initial interest rate of 6.625%. *See, e.g.*, Second Am. Compl., ECF No. 49.

agreement to promptly and "fully cooperate and adjust for clerical errors [in] any or all loan closing documentation," Def.'s Exh. B at 1.[11]  Because the interest floor in Note I directly contradicted the terms of the Six-Month LIBOR Adjustable-Rate-Loan Program described in the pre-printed disclosure described above, the Court, "draw[ing] on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, may reject Plaintiffs' unreasonable inference that the "alterations of the note were done unilaterally by the defendant and/or its agents," Second Am. Compl. ¶ 17, ECF No. 49, but can instead reasonably infer that Plaintiffs' attorney-in-fact executed Note II on Plaintiffs' behalf when the clerical error in Note I was brought to its attention.  *See Iqbal*, 556 U.S. at 679 (observing that "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task").

**B.      Note II reflects the terms agreed to by the parties.**

Note II, executed by Plaintiffs' attorney-in-fact and sent to Plaintiffs shortly after Plaintiffs had received the first packet of closing documents, reflects the correction of the mutual mistake contained in Note I and evidences the terms agreed upon by the parties.  Consistent with the disclosure describing the adjustable rate mortgage program Plaintiffs had chosen to finance their loan, Note II provided that the interest rate would never fall below "the initial interest rate over the term of the loan."  *Id.*; *see also* Am. Compl. Exh. E, ECF No. 9-5 (establishing the initial interest rate and the interest floor as 6.625%).  Even accepting Plaintiffs' factual allegations as true, as this Court must do, it is obvious that Plaintiffs' Second Amended Complaint fails to allege sufficient facts to "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679, especially when viewed in light of the documents of which Plaintiffs "had

---

[11] It is well established that "in the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails."  *Slater v. Bank of Am.*, No. 1:10-1091, 2012 U.S. Dist. LEXIS 101687, at *21 (S.D. W. Va. June 26, 2012) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

notice and which were integral to their claim – and that they apparently most wanted to avoid." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991). Accordingly, "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their [Second Amended Complaint] must be dismissed." *Twombly*, 550 U.S. at 570.

## II.   <u>Plaintiffs are not Entitled to Declaratory Relief as a Matter of Law.</u>

Even if Plaintiffs had sufficiently pled their breach-of-contract claim, their request for "a declaration that the defendants have breached the Adjustable Rate Note as alleged" must be dismissed. Second Am. Compl. at 7, ECF No. 49. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). However, "courts have repeatedly recognized that '[a] declaratory judgment serves no "useful purpose" when it seeks only to adjudicate an already-existing breach of contract claim.'" *Metra Indus. v. Rivanna Water & Sewer Auth.*, No. 3:12cv49, 2014 U.S. Dist. LEXIS 21568, at *5 (W.D. Va. Feb. 19, 2014) (quoting *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895, at *33 (S.D.N.Y. July 25, 2012)); *see also Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 11-21163, 2012 U.S. Dist. LEXIS 57041, at *2 (S.D. Fla. 2012) (noting that "[a] court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (dismissing as "redundant" a declaratory judgment claim that was asserted in addition to a claim for of breach of contract); *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (emphasizing that the declaration sought would

"already be addressed in the breach of contract claim" and, thus, that "a declaratory judgment would not further clarify legal relations among the parties").

In their Second Amended Complaint, Plaintiffs' request for a declaratory judgment "is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." *Miami Yacht Charters*, 2012 U.S. Dist. LEXIS 57041, at *2. Thus, because the declaration sought by Plaintiffs would "already be addressed in [their] breach of contract claim," and because "a declaratory judgment would not further clarify legal relations among the parties," *Camofi Master*, 452 F. Supp. 2d at 480, Plaintiffs are not entitled to declaratory relief, as a matter of law.

### III.    Plaintiffs are not Entitled to Attorney Fees as a Matter of Law.

"Under South Carolina law, '[a]ttorney's fees are not recoverable unless authorized by contract or statute.'" *Uhlig v. Shirley*, 895 F. Supp. 2d 707, 710 (D.S.C. 2012) (citing *Jackson v. Speed*, 486 S.E.2d 750, 759 (1997)). Plaintiffs seek "reasonable attorney fees" in their Second Amended Complaint, but neither Note I nor Note II contain any provision allowing Plaintiffs to recover attorney's fees. Furthermore, Plaintiffs' Second Amended Complaint fails to point to any statute or terms in the agreement authorizing their recovery of attorney fees. Accordingly, Plaintiffs' request for attorney fees in their Second Amended Complaint should be dismissed.

### IV.    Plaintiffs Failed to Adequately Plead Consequential Damages or Facts Demonstrating Entitlement to Consequential Damages.

The Supreme Court of South Carolina has "said that 'consequential damages occasioned by breach of contract may be recovered when such damages may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made.'" *Stern & Stern Assocs. v. Timmons*, 423 S.E.2d 124, 126 (S.C. 1992) (quoting *Goodwin v. Hilton Head Co.*, 259 S.E.2d 611, 613 (S.C. 1979)). In order to prove that such damages were "within the

contemplation of the parties at the time the contract was signed," the plaintiff "must show that the defendant was clearly warned of the probable existence of unusual circumstances or that . . . the defendant had 'reason to foresee the probable existence of such circumstances.'"  *Id.* (quoting 5 Arthur Linton Corbin, *Corbin on Contracts* § 1011 (1964)).   Furthermore, although "the defendant need not foresee the exact dollar amount of the injury, the defendant must  know or have reason to know the special circumstances so as to be able to judge the degree of probability that damage will result from [the breach]."  *Id.* (quoting Corbin, *supra*, § 1014).   Finally, the "special circumstances must exist when the contract was made."  *Id.* (quoting Corbin, *supra*, § 1010).

Although "state substantive law applies in determining whether the elements of special damages are met," the "'form in which claims for special damages must be stated is a procedural question governed by Fed. R. Civ. P. 9(g).'"  *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (quoting *Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir. 1999)).   "Federal Rule of Civil Procedure 9(g) requires that 'special' damages, namely, those that are not the 'ordinary result' of the conduct alleged, 'shall be specifically stated.'"  *Id.* (quoting *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1266 (10th Cir. 2007)).   "The primary purpose of Rule 9(g) is one of notice, both to 'inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint.'"  *Id.* (quoting *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962)).

Here, Plaintiffs seek "consequential damages in an amount to be determined at trial." Second Am. Complaint at 7, ECF No. 49.  However, Plaintiffs' consequential damages are not "specifically stated."  Fed. R. Civ. P. 9(g).  Nor do Plaintiffs even allege that they did, in fact,

suffer consequential damages. Thus, their cursory request for "consequential damages in an amount to be determined at trial" fails to satisfy the heightened pleading requirement of Rule 9(g). *See Carnell Constr.*, 745 F.3d at 726 (affirming district court's ruling that plaintiff's "third amended complaint failed to plead [consequential] damages in connection with its breach of contract claims" where the "breach of contract count merely prayed for aggregate damages 'in an amount to be proven at trial but not less than $419,575, plus interest'").

In any event, Plaintiffs fail to allege any facts in their Second Amended Complaint demonstrating that they would be entitled to consequential damages under South Carolina law. Plaintiffs do not allege that such damages were "within the contemplation of the parties at the time the contract was signed." *Stern & Stern*, 243 S.E.2d at 126 (citation and internal quotation marks omitted). Plaintiffs fail to allege either "special circumstances" existing when the contract was made, or knowledge by Citibank – or reason to know – of any "special circumstances so as to be able to judge the degree of probability that damage [would] result from [a breach]." *Id.* Thus, because Plaintiffs' Second Amended Complaint fails to specifically state Plaintiffs' request for consequential damages, as required by Rul 9(g), and because, in any event, Plaintiffs fail to allege any facts entitling them to consequential damages under South Carolina law, Plaintiffs' request for consequential damages must be dismissed.[12]

## CONCLUSION

For the reasons stated above, Defendant Citibank, N.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6, respectfully requests that the Court grant its Motion for Judgment on the Pleadings, dismiss the Second Amended Complaint with prejudice, and grant such other and further relief that the Court deems appropriate and just.

---

[12] Similarly, even if a viable claim could be stated, any actual damages are offset by Plaintiffs' continuing default under the Note.

Dated: December 1, 2014

Respectfully submitted,

**CITIBANK, N.A. AS TRUSTEE FOR
LEHMAN XS TRUST MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2005-6,**

By:  ____/s/ Jason E. Manning_____

John C. Lynch (W. Va. Bar No. 6627)
Jason E. Manning (W. Va. Bar No. 11277)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division**

**JAMES J. ROWE and SHARON H. ROWE,**

       *Plaintiffs,*

      **v.**                         **Civil Action No. 5:13-cv-21369**

**CITIBANK N.A. AS THE TRUSTEE
FOR LEHMAN XS TRUST MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2005-6,**

       *Defendant.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2014, I electronically filed the foregoing

Memorandum in Support of Motion for Judgment on the Pleadings with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to the following CM/ECF

participants:

**Counsel for Plaintiffs**

L. Lee Javins, II, Esq. (ljavins@bbjlc.com)
Guy R. Bucci, Esq. (kpaxton@bbjlc.com)
Mark A. Barney, Esq. (mbarney@bbjlc.com)
Bucci, Bailey & Javins, L.C.
213 Hale Street
P.O. Box 3712
Charleston, WV 2533

                          /s/ Jason E. Manning
                          Jason E. Manning (W. Va. Bar No. 11277)
                          TROUTMAN SANDERS LLP
                          222 Central Park Avenue, Suite 2000
                          Virginia Beach, VA  23462
                          Telephone:  (757) 687-7564
                          Facsimile:  (757) 687-1524
                          E-mail: jason.manning@troutmansanders.com

24031370v1